(No. 5058. Decided September 5, 1905.)

THE STATE OF WASHINGTON, *on the Relation of Tacoma Industrial Company, Plaintiff,* v. WHITE RIVER POWER COMPANY *et al., Respondents.*[1]

EMINENT DOMAIN—PUBLIC USE—PUBLIC SERVICE CORPORATIONS— NO CONDEMNATION BY ELECTRIC LIGHT AND POWER COMPANY ORGANIZED FOR COMMERCIAL PURPOSES—PUBLIC NECESSITY AND CONTROL. The right of eminent domain cannot be exercised in favor of an electric light and power corporation organized for the purpose of diverting water for power purposes for the generation of electricity to be sold commercially to manufactories, railways, and cities, in the absence of statutory regulation and guarantees of the public use and enjoyment of the property; since the same is not a public service corporation, and the use not a public use, and public necessity does not require it.[2]

SAME—CONSTITUTIONAL AUTHORITY FOR USING WATERS FOR MANUFACTURING PURPOSES. Const., art. 21, declaring the use of waters for manufacturing purposes a public use, is in conflict with the due

[1]Reported in 82 Pac. 150.

[2]NOTE. For a late case in point, see, *Brown v. Gerald* (Me.), 61 Atl. 785. REP.

process clause of the Federal Constitution in so far as it may be construed to extend the right of eminent domain to take private property for uses essentially private.

Certiorari to review an order of the superior court for Pierce county, Huston, J., entered in favor of the petitioner February 19, 1904, upon declaring a public use, in a proceeding to condemn land. Reversed.

*Carr & Preston, John A. Shackleford, Walker & Munn,* and *Stanton Warburton,* for relator (defendant below).

(1) The use is not a public one, because: First, no obligation rests upon the power company to serve the public independently of its own will. *Healy Lum. Co. v. Morris,* 33 Wash. 490, 74 Pac. 681, 99 Am. St. 964; *Berrien Springs Water Power Co. v. Berrien Circuit Judge,* 133 Mich. 48, 94 N. W. 379, 103 Am. St. 538; *In re Eureka Basin etc. Co.,* 96 N. Y. 42; *Avery v. Vermont Elec. Co.,* 75 Vt. 235, 54 Atl. 179, 98 Am. St. 818; *Board of Health v. Van Hoesen,* 87 Mich. 533, 49 N. W. 894; *Jordan v. Woodward,* 40 Me. 317; *Fallsburg Power & Mfg. Co. v. Alexander,* 101 Va. 98, 43 S. E. 194, 99 Am. St. 855; *Eldridge v. Smith,* 34 Vt. 484; *Tyler v. Beacher,* 44 Vt. 648, 8 Am. Rep. 398; *Varner v. Martin,* 21 W. Va. 534; *Plecker v. Rhodes,* 30 Grat. 795; *Attorney General v. Eau Claire,* 37 Wis. 400; *McCulley v. Cunningham,* 96 Ala. 583, 11 South. 694. Second, at least part of its purposes are private uses. *Ryerson v. Brown,* 35 Mich. 333, 24 Am. Rep. 564; *In re Rhode Island etc. R. Co.,* 22 R. I. 457, 48 Atl. 591, 52 L. R. A. 879; *Avery v. Vermont Elec. Co.,* and *Eldridge v. Smith, supra.* And this is fatal to the proceeding. *McCulley v. Cunningham, supra; Kaukauna Water Power Co. v. Green Bay etc. Canal Co.,* 142 U. S. 254, 12 Sup. Ct. 73, 35 L. Ed. 1004; *Green Bay etc. Canal Co. v. Patten Paper Co.,* 172 U. S. 58, 19 Sup. Ct. 97, 43 L. Ed. 364; *Attorney General v. Eau Claire, supra; State v. Eau Claire,* 40 Wis. 533; *In re Barre Water Co.,* 62 Vt. 27,

20 Atl. 109, 9 L. R. A. 195; 1 Lewis, Eminent Domain (2d ed.), § 206. Third, Const., art. 21, providing that the use of waters for manufacturing purposes shall be deemed a public use, was not intended to, and cannot, make inherently private uses public uses. *Missouri Pac. R. Co. v. Nebraska,* 164 U. S. 403, 17 Sup. Ct. 130, 41 L. Ed. 489; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; 1 Lewis, Eminent Domain (2d ed.), §§ 202, 206a; *Denver etc. Coal Co. v. Union Pac. R. Co.,* 34 Fed. 386. Neither is the generation of electricity "manufacturing" in the ordinary sense. *Frederick Elec. L. etc. Co. v. Frederick,* 84 Md. 599, 36 Atl. 362, 36 L. R. A. 130; *Commonwealth v. Northern Elec. L. etc. Co.,* 145 Pa. St. 105, 22 Atl. 839, 14 L. R. A. 107; *Commonwealth v. Edison Elec. L. Co.,* 145 Pa. St. 131, 22 Atl. 841, 845, 27 Am. St. 683; *Commonwealth v. Edison Elec. L. etc. Co.,* 170 Pa. St. 231, 32 Atl. 419; *Commonwealth v. Brush Elec. L. Co.,* 145 Pa. St. 147, 22 Atl. 844.

(2) Property already devoted to a public use cannot be taken by condemnation for the same public use. 1 Lewis, Eminent Domain (2d ed.), § 276; *St. Paul Union Depot Co. v. St. Paul,* 30 Minn. 359, 15 N. W. 684; *Cary Library v. Bliss,* 151 Mass. 364, 25 N. E. 92, 7 L. R. A. 765; *In re Brooklyn,* 143 N. Y. 596, 38 N. E. 983, 26 L. R. A. 270; *Suburban R. Co. v. Metropolitan etc. R. Co.,* 193 Ill. 217, 61 N. E. 1090; *Petition of Philadelphia etc. R. Co.,* 203 Pa. St. 354, 53 Atl. 191; *Pittsburgh Junction R. Co.'s Appeal* (Pa.), 6 Atl. 564; *Mobile etc. R. Co. v. Alabama Midland R. Co.,* 87 Ala. 501, 6 South. 404; *Lake Erie etc. R. Co. v. Board of Com'rs,* 57 Fed. 945; *City of Albia v. Chicago etc. R. Co.,* 102 Iowa 624, 71 N. W. 541; *Sabine etc. R. Co. v. Gulf etc. R. Co.,* 92 Tex. 162, 46 S. W. 784; *Rutland-Canadian R. Co. v. Central Vermont R. Co.,* 72 Vt. 128, 47 Atl. 399; *Samish River Boom Co. v. Union Boom Co.,* 32 Wash. 586, 73 Pac. 670. There is no priority of right to condemn. 2 Lewis, Eminent Domain (2d ed.), § 306; *Joplin etc. R. Co.*

*v. Kansas City etc. R. Co.,* 135 Mo. 549, 37 S. W. 540; *Lake Merced Water Co. v. Cowles,* 31 Cal. 215; *San Francisco etc. Water Co. v. Alameda Water Co.,* 36 Cal. 639; *New York etc. R. Co. v. Boston etc. R. Co.,* 36 Conn. 196; *Rochester etc. R. Co. v. New York etc. R. Co.,* 110 N. Y. 119, 17 N. E. 678; *Coe v. New Jersey Midland R. Co.,* 31 N. J. Eq. 105. The White River Company can claim no rights in this proceeding prior to the 11th day of December, 1902, the day of the commencement of the condemnation proceedings. *Kanawha etc. R. Co. v. Glen Jean etc. R. Co.,* 45 W. Va. 119, 30 S. E. 86; *In re American Transp. & Nav. Co.,* 58 N. J. L. 109, 32 Atl. 74; *Minneapolis etc. R. Co. v. Chicago etc. R. Co.,* 116 Iowa 681, 88 N. W. 1082; *Indiana Power Co. v. St. Joseph etc. Power Co.,* 159 Ind. 42, 63 N. E. 304, 64 N. E. 468; *Kansas etc. R. Co. v. Northwestern Coal & Min. Co.,* 161 Mo. 288, 61 S. W. 684, 84 Am. St. 717, 51 L. R. A. 936. If there was priority, the Industrial Company is first in diligence, having completed its proceedings by purchase or otherwise, prior to the institution of the rival suit. *Providence etc. R. Co., Petitioner,* 17 R. I. 324, 21 Atl. 965; *Suburban R. Co. v. Metropolitan West Side Elev. R. Co., supra; Union Term. R. Co. v. Kansas City Belt R. Co.,* 9 Kan. App. 28, 60 Pac. 541; *Chicago etc. R. Co. v. Starkweather,* 97 Iowa 159, 66 N. W. 87, 59 Am. St. 404, 31 L. R. A. 183; *Matter of Boston etc. R. Co.,* 53 N. Y. 574; *In re New York etc. R. Co. v. Union Steam-boat Co.,* 99 N. Y. 12, 1 N. E. 27; *Lake Shore etc. R. Co. v. New York etc. R. Co.,* 8 Fed. 858; *St. Paul Union Depot Co. v. St. Paul,* 30 Minn. 359, 15 N. W. 684; *Evergreen Cemetery Ass'n v. New Haven,* 43 Conn. 234, 21 Am. Rep. 643; 1 Wood, Railway Law, 691; *Diamond Jo Line Steamers v. Davenport,* 114 Iowa 432, 87 N. W. 399, 54 L. R. A. 859; *Kanawha etc. R. Co. v. Glen Jean etc. R. Co., supra.* The filing of the articles of the rival company is of no significance in this connection. *Morris etc. R. Co. v. Blair,* 9 N. J. Eq. 635; *Indiana Power Co. v. St. Joseph etc. Power Co., supra;* Mills, Eminent Domain (2d

ed.), § 47.   Nor is the magnitude of the enterprises.   *Seattle etc. R. Co. v. State,* 7 Wash. 150, 34 Pac. 551, 38 Am. St. 866, 22 L. R. A. 217.   The priority claimed by railroad companies rests entirely on statute.   *Rochester etc. R. Co. v. New York etc. R. Co.,* 110 N. Y. 128, 17 N. E. 680; *Barre R. Co. v. Montpelier etc. R. Co.,* 61 Vt. 1, 17 Atl. 923, 15 Am. St. 877, 4 L. R. A. 785; *Williamsport etc. R. Co. v. Philadelphia etc. R. Co.,* 141 Pa. St. 407, 21 Atl. 645, 12 L. R. A. 220; *Indiana Power Co. v. St. Joseph etc. Power Co., supra; Samish River Boom Co. v. Union Boom Co., supra.*

(3)   The rivers in question are navigable, and condemnation of the waters therein involves an illegal and prohibited act.   *Northern Pac. R. Co. v. United States,* 104 Fed. 691; *Leovy v. United States,* 92 Fed. 344; *The Daniel Ball,* 10 Wall. 557, 19 L. Ed. 1001; *Escanaba etc. Transp. Co. v. Chicago,* 107 U. S. 678, 2 Sup. Ct. 185, 27 L. Ed. 442; *United States v. Rio Grande Dam etc. Co.,* 174 U. S. 690, 19 Sup. Ct. 770, 43 L. Ed. 1136; *United States v. Bellingham Bay Boom Co.,* 176 U. S. 211, 20 Sup. Ct. 343, 44 L. Ed. 437. It is competent for the Industrial Company to raise this question.   *Chicago v. Law,* 144 Ill. 569, 33 N. E. 855; *In re Brooklyn Elev. R. Co.,* 11 N. Y. Supp. 161.

(4)   There is no power to condemn the waters, since they flow through an Indian reservation.   *New Whatcom v. Fairhaven Land Co.,* 24 Wash. 493, 64 Pac. 735, 54 L. R. A. 190; U. S. Const., art. 1, §§ 4, 8.

(5)   The right of a corporation to condemn any species of property is a creature of statute, and it is incumbent upon the petitioning corporation to point out a statute giving such right expressly or by necessary implication.   1 Lewis, Eminent Domain (2d ed.), §§ 240, 254; *In re Poughkeepsie Bridge Co.,* 108 N. Y. 483, 15 N. E. 601; *Seattle v. Fidelity Trust Co.,* 22 Wash. 154, 60 Pac. 133; *East St. Louis v. St. John,* 47 Ill. 463; *Howe v. Norman,* 13 R. I. 488; *Atkinson v. Marietta etc. R. Co.,* 15 Ohio St. 21; *Vreeland v. Jersey City,* 54 N. J. L. 49, 22 Atl. 1052; *Mitchell v. Illinois etc. R. &*

*Coal Co.,* 68 Ill. 286; *Currier v. Marrietta etc. R. Co.,* 11
Ohio St. 228; *Tacoma v. State,* 4 Wash. 64, 29 Pac. 847;
*Sharp v. Speir,* 4 Hill 76; *In re Thomson,* 86 Hun 405, 33
N. Y. Supp. 467, aff. in *Thomson v. De Camp,* 147 N. Y.
701, 42 N. E. 726. The history of the legislation on the sub-
ject shows no such authority. See, Laws 1879, p. 124, Bal.
Code, § 4281; Laws 1879, p. 134 as amended, Code 1881,
§ 2472, Bal. Code, § 7107; Laws 1891, p. 327, Bal. Code,
§ 4091; Laws 1895, p. 80, Bal. Code, §§ 5648-5650; Laws
1901, p. 299, Pierce's Code, §§ 5155-5157. The grant of inci-
dental powers will not be held to include power to which the
same are incidental. *Watson v. Acquackanonck Water Co.,*
7 Vroom 195; *Updike v. Wright,* 81 Ill. 49; *Scruggs v. Reese,*
128 Ind. 399, 27 N. E. 748; 1 Lewis, Eminent Domain (2d
ed), § 256e; *Cobb v. Massachusetts Chemical Co.,* 179 Mass.
423, 60 N. E. 790; *In re Barre Water Co.,* 62 Vt. 27, 20 Atl.
109, 9 L. R. A. 195. The diversion of water from a stream
for power purposes without returning the same to the stream
is unlawful. *Weiss v. Oregon Iron & Steel Co.,* 13 Ore. 496,
11 Pac. 255; *Garwood v. New York Cent. etc. R. Co.,* 83
N. Y. 400, 38 Am. Rep. 452.

(6) The White River Company could not condemn lands
until the whole amount of its stock was subscribed. Bal.
Code, § 4250; Pierce's Code, § 7053; Const., art. 12, § 8;
*Puget Sound etc. R. Co. v. Ouelette,* 7 Wash. 265, 34 Pac.
929. Nor do business in this state. Bal. Code, §§ 4291,
4292, 4293; *Hampton v. Clinton Water Co.,* 65 N. J. L. 158,
46 Atl. 650; *Society Perun v. Cleveland,* 43 Ohio St. 481,
3 N. E. 357; *Atkinson v. Marietta etc. R. Co.,* 15 Ohio St.
21; *Matter of Brooklyn etc. R. Co.,* 72 N. Y. 245.

(7) The diversion was not at the place designated by the
articles of incorporation; *expressio unius, exclusio alterius.*
Clark & Marshall, Private Corporations, pp. 378, 380, 404;
Green's Brice's Ultra Vires (2d Am. ed.), p. 62; *In re Water
Com'rs etc.,* 3 Edw. Ch. (N. Y.) 552, 554; *Charles River
Bridge v. The Warren Bridge,* 11 Pet. 516, 9 L. Ed. 812;

*Syracuse v. Benedict,* 86 Hun 343, 33 N. Y. Supp. 944. And
the lands included property in King county outside the juris-
diction of the Pierce county court. Bal. Code, § 5641. The
court also erred in the admission of evidence and in its find-
ings as to the necessity of the appropriation; prospective use
is insufficient. *Rensselaer etc. R. Co. v. Davis,* 43 N. Y. 137;
*Colorado etc. R. Co. v. Union Pac. R. Co.,* 41 Fed. 293. The
rights of the two companies are to be measured by their
present necessities. *Butte etc. R. Co. v. Montana etc. R. Co.,*
16 Mont. 504, 41 Pac. 232, 50 Am. St. 508, 31 L. R. A. 298;
*Kansas etc. Coal R. Co. v. Northwestern Coal & Min. Co.,*
161 Mo. 288, 61 S. W. 684, 84 Am. St. 717, 51 L. R. A. 936;
*Sioux City etc. R. Co. v. Chicago etc. R. Co.,* 27 Fed. 770;
*Seattle etc. R. Co. v. Bellingham Bay etc. R. Co.,* 29 Wash.
491, 69 Pac. 1107; *Spring Valley Water-Works v. San Mateo
Water-Works* (Cal.), 28 Pac. 447; *Railway Company v.
Alling,* 99 U. S. 463, 25 L. Ed. 438; *In re Staten Island
Rapid Transit Co.,* 103 N. Y. 251, 8 N. E. 548; *Chicago etc.
R. Co. v. Starkweather,* 97 Iowa 159, 66 N. W. 87, 59 Am.
St. 404, 31 L. R. A. 183.

*Thomas B. Hardin, James M. Ashton,* and *Norwood W.
Brockett,* for respondents (relators below), contended, among
other things, that the use proposed by the power company is
a public use. *Boston etc. Mill Corp. v. Newman,* 12 Pick.
467; *Hazen v. Essex Co.,* 12 Cush. 475; *Great Falls Mfg. Co.
v. Fernald,* 47 N. H. 444; *Ash v. Cummings,* 50 N. H. 591;
*Amoskeag Mfg. Co. v. Head,* 56 N. H. 386; *Amoskeag Mfg.
Co. v. Worcester,* 60 N. H. 522; *Scudder v. Trenton Delaware
Falls Co.,* 1 N. J. Eq. 694, 23 Am. Dec. 756; *Olmstead v.
Camp,* 33 Conn. 532, 89 Am. Dec. 221; *Todd v. Austin,* 34
Conn. 78; *Hankins v. Lawrence,* 8 Blackf. 266; *Burnham v.
Thompson,* 35 Iowa 421; *Venard v. Cross,* 8 Kan. 248; *Miller
v. Troost,* 14 Minn. 365; *Newcomb v. Smith,* 2 Pinn. (Wis.)
131; *Rockingham County L. & P. Co. v. Hobbs,* 72 N. H.
531, 58 Atl. 46; *State ex rel. Attorney General v. Toledo,*

48 Ohio St. 112, 26 N. E. 1061, 11 L. R. A. 729; *Charleston Natural Gas Co. v. Lowe,* 52 W. Va. 662, 44 S. E. 410. The argument that the government retains no control was early answered in the railroad cases. *Beekman v. Saratoga etc. R. Co.,* 3 Paige Ch. (N. Y.) 45, 22 Am. Dec. 679; *Concord Railroad v. Greely,* 17 N. H. 47; *De Camp v. Hibernia R. Co.,* 47 N. J. L. 43; *Lexington & Ohio R. v. Applegate,* 8 Dana (Ky.) 289, 33 Am. Dec. 497; *Brown v. Beatty,* 34 Miss. 227, 69 Am. Dec. 389; *Bloodgood v. Mohawk etc. R. Co.,* 18 Wend. (N. Y.) 9, 31 Am. Dec. 313. And also in the telegraph and telephone cases. *Turnpike Co. v. American News Co.,* 43 N. J. L. 381; *West Virginia Transp. Co. v. Volcanic Oil & Coal Co.,* 5 W. Va. 382. The municipal uses contemplated justify the appropriation. 1 Idaho Codes (1901), p. 66; *Hollister v. State* (Idaho), 71 Pac. 541; *New Orleans Gas-Light Co. v. Louisiana Light etc. Mfg. Co.,* 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; *Opinion of Justices,* 150 Mass. 592, 24 N. E. 1084, 8 L. R. A. 487; *In re Municipal Fuel Plants,* 182 Mass. 605, 66 N. E. 25; *Indiana Power Co. v. St. Joseph Power etc. Co.,* 159 Ind. 42, 63 N. E. 304, 64 N. E. 468; *Denver Power & Irr. Co. v. Denver etc. R. Co.,* 30 Colo. 204, 69 Pac. 568, 60 L. R. A. 383. The use in this case is a public use. *Lamborn v. Bell,* 18 Colo. 346, 32 Pac. 989, 20 L. R. A. 241; *Salt Lake City Water & Elec. Power Co. v. Salt Lake City,* 25 Utah. 441, 71 Pac. 1067; 1 Lewis, Eminent Domain (2d ed.), §§ 131a, 173; *Sultan Water & Power Co. v. Weyerhauser Timber Co.,* 31 Wash. 558, 72 Pac. 114; *Thompson Houston Electric Co. v. Newton,* 42 Fed. 723; *State ex rel. Canton v. Allen,* 178 Mo. 555, 77 S. W. 868; *Scudder v. Trenton Delaware Falls Co.,* 1 N. J. Eq. 726; *State ex rel. Kent Lum. Co. v. Superior Court,* 35 Wash. 303, 77 Pac. 382. This court impliedly upheld the right in, *Hathaway v. Yakima Water L. & P. Co.,* 14 Wash. 469, 44 Pac. 896, 53 Am. St. 847, and *Yakima Water L. & P. Co. v. Hathaway,* 18 Wash. 377, 51 Pac. 471. The following have been held to be public uses: Telephone and tele-

graph plants. 1 Lewis, Eminent Domain (2d ed.), § 172; *Turnpike Co. v. American News Co.,* 43 N. J. L. 381; *State ex rel. National Subway Co. v. St. Louis,* 145 Mo. 551, 46 S. W. 981, 42 L. R. A. 113. A plant for piping and thereby supplying oil to the public. *Consumers' Gas Trust Co. v. Harless,* 131 Ind. 446, 29 N. E. 1062, 15 L. R. A. 505; *West Virginia Transp. Co. v. Volcanic Oil & Coal Co., supra.* Plants for collecting and booming logs on streams. *North River Boom Co. v. Smith,* 15 Wash. 138, 45 Pac. 750; *Boom Co. v. Patterson,* 98 U. S. 403, 25 L. Ed. 206; *Samish River Boom Co. v. Union Boom Co.,* 32 Wash. 586, 73 Pac. 670; 1 Lewis, Eminent Domain, § 177. A plant to supply gas for public and private lighting and heating. 1 Lewis, Eminent Domain, § 173; *State ex rel. Snyder v. Portland Natural Gas Co.,* 153 Ind. 483, 53 N. E. 1089, 74 Am. St. 314, 53 L. R. A. 413; *Johnston's Appeal* (Pa.), 7 Atl. 167. Irrigation plants. *San Diego Land etc. Co. v. Sharp,* 97 Fed. 395; *Oury v. Goodwin,* 3 Ariz. 255, 26 Pac. 376; *Cummings v. Peters,* 56 Cal. 593; *Fallbrook Irrigation Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *Gutierres v. Albuquerque Land & Irr. Co.,* 188 U. S. 545, 23 Sup. Ct. 338, 47 L. Ed. 588; *Prescott Irr. Co. v. Flathers,* 20 Wash. 454, 55 Pac. 635; 1 Lewis, Eminent Domain (2d ed.), §§ 160, 242; 10 Am. & Eng. Ency. Law (2d ed.), 1058, 1060; *Hollister v. State* (Idaho), 71 Pac. 541. The questions of necessity and expediency are for the legislature alone; it is not for the court to say whether the public can be adequately supplied in other ways, or whether a proper water power can be secured by private purchase. *Charleston Natural Gas Co. v. Low,* 52 W. Va. 662, 44 S. E. 410; *Bloodgood v. Mohawk R. Co., supra; Gilmer v. Lime Point,* 18 Cal. 229; 1 Lewis, Eminent Domain (2d ed.), §§ 162, 237, 238; *Moseley v. New York Shore Water Co.,* 94 Me. 83, 46 Atl. 809; *Concord R. v. Greeley,* 17 N. H. 47. The power to condemn for a public use is not affected by the inclusion in the articles of incorporation of other powers. *Lake Koen Nav. etc. Co. v.*

*Klein,* 63 Kan. 484, 65 Pac. 684; *Denver R. etc. Co. v. Union Pac. R. Co.,* 34 Fed. 386; 1 Lewis, Eminent Domain (2d ed.), § 160; *Hollister v. State* (Idaho), 71 Pac. 543; *Bridal Veil Lumbering Co. v. Johnson,* 30 Ore. 205, 46 Pac. 790, 60 Am. St. 818, 34 L. R. A. 368; *In re Niagara Falls etc. R. Co.,* 108 N. Y. 375, 15 N. E. 429; *Chicago R. Co. v. Wiltse,* 116 Ill. 449, 6 N. E. 49; *Phillips v. Watson,* 63 Iowa 28, 18 N. W. 659; *Plecker v. Rhodes,* 30 Grat. 795; *Pocantico Water-Works Co. v. Bird,* 130 N. Y. 249, 29 N. E. 246; *In re Mayor of New York,* 135 N. Y. 253, 31 N. E. 1043. The plant was for "manufacturing purposes" within Const., art. 21. *Missouri Pac. R. Co. v. Nebraska,* 164 U. S. 403, 17 Sup. Ct. 130, 41 L. Ed. 489; *Beggs v. Edison Electric Illum. Co.,* 96 Ala. 295, 11 South. 381, 38 Am. St. 94; *Nassau Gas-Light Co. v. Brooklyn,* 89 N. Y. 409; *Lamborn v. Bell,* 18 Colo. 346, 32 Pac. 989, 20 L. R. A. 241; *Denver Power & Irr. Co. v. Denver etc. R. Co.,* 30 Colo. 204, 69 Pac. 568, 60 L. R. A. 383; *People ex rel. American etc. Dredg. Co. v. Wemple,* 129 N. Y. 558, 29 N. E. 812; *Commonwealth v. Keystone Electric L. etc. Co.,* 193 Pa. St. 245, 44 Atl. 326; *Southern Electric L. & P. Co. v. Philadelphia,* 191 Pa. St. 170, 43 Atl. 123; *Commonwealth v. Northern Electric L. & P. Co.,* 145 Pa. St. 105, 22 Atl. 839, 14 L. R. A. 107; *Commonwealth v. Edison Electric Light Co.,* 145 Pa. St. 131, 22 Atl. 841, 845, 27 Am. St. 683; *Commonwealth v. Brush Electric Light Co.,* 145 Pa. St. 147, 22 Atl. 844; *Commonwealth v. Edison Electric Light & P. Co.,* 170 Pa. St. 231, 32 Atl. 419; *Frederick L. & P. Co. v. Frederick City,* 84 Md. 599, 36 Atl. 362, 36 L. R. A. 130; *St. Mary's Gas Co. v. County of Elk,* 191 Pa. St. 458, 43 Atl. 321; *Ridgway Light & Heat Co. v. County of Elk,* 191 Pa. St. 465, 43 Atl. 323. The rights of proprietors on a navigable stream are subordinate to public uses. *Minneapolis Mill Co. v. Board of Water Com'rs,* 56 Minn. 485, 58 N. W. 33; *St. Anthony Falls Water-Power Co. v. St.*

42—39 WASH.

*Paul Water Com'rs,* 168 U. S. 349, 18 Sup. Ct. 157, 42
L. Ed. 497; *Gutierres v. Albuquerque Land Co., supra; Peo-*
*ple v. Baltimore etc. R. Co.,* 117 N. Y. 150, 22 N. E. 1026;
*Brooklyn Park Com'rs v. Armstrong,* 45 N. Y. 234, 6 Am.
Rep. 70. The right to appropriate water and apply it to a
private beneficial use, or to a public beneficial use, is recog-
nized and enforced in this state. *Offield v. Ish,* 21 Wash.
277, 57 Pac. 809; *Northport Brewing Co. v. Perrott,* 22
Wash. 243, 60 Pac. 403; *Longmire v. Smith,* 26 Wash. 439,
67 Pac. 246, 58 L. R. A. 308; *Isaacs v. Barber,* 10 Wash.
124, 38 Pac. 871, 45 Am. St. 772, 30 L. R. A. 665; 1 Bal.
Code, §§ 4091, 4281, 4281a; Laws 1901, p. 299; *Prescott*
*Irr. Co. v. Flathers,* 20 Wash. 454, 55 Pac. 635; *Larsh v.*
*Test,* 48 Ind. 130. If appropriated by a *private* corporation
and for a *private* use, and a prior riparian ownership exists
on the stream below, the appropriator must purchase from
or settle with the lower proprietor. *Benton v. Johncox,* 17
Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107.
The statutes authorize a foreign corporation to condemn land.
Laws 1879, p. 124; Laws 1889-90, p. 288, Bal. Code, § 4291;
*St. Louis etc. R. Co. v. Lewright,* 113 Mo. 660, 21 S. W. 210;
*Southern Illinois etc. Bridge Co. v. Stone,* 174 Mo. 1, 73
S. W. 453; *Gulf etc. R. Co. v. Southwestern etc Tel. Co.,* 25
Tex. Civ. App. 488, 61 S. W. 406; *Texas Midland R. Co.*
*v. Southwestern etc. Tel. Co.* (Tex. Civ. App.), 57 S. W. 312;
*Dodge v. Council Bluffs,* 57 Iowa 560, 10 N. W. 886; *New*
*York etc. R. Co. v. Welsh,* 143 N. Y. 411, 38 N. E. 378, 42
Am. St. 734; *In re Marks,* 6 N. Y. Supp. 105; *Abbott v.*
*New York etc. R. Co.,* 145 Mass. 450, 15 N. E. 91; *Union*
*Pac. R. Co. v. Burlington etc. R. Co.,* 3 Fed. 106; *Gray v. St.*
*Louis etc. R. Co.,* 81 Mo. 126; *Santa Clara Female Academy*
*v. Sullivan,* 116 Ill. 375, 6 N. E. 183, 56 Am. Rep. 776;
*Barnes v. Suddard,* 117 Ill. 237, 7 N. E. 477; *Dittenhoefer*
*v. Coeur d'Alene Clothing Co.,* 4 Wash. 519, 30 Pac. 660;
*Knapp, Burrell & Co. v. Strand,* 4 Wash. 686, 30 Pac. 1063;
*Columbus Waterworks Co. v. Long,* 121 Ala. 245, 25 South.

702; *State ex rel. Attorney General v. Sherman,* 22 Ohio St.
411. The failure of the corporation to comply with statutory
regulations whereby a penalty was incurred does not invali-
date its transactions. *Fritts v. Palmer,* 132 U. S. 282, 10
Sup. Ct. 93, 33 L. Ed. 317; *Edison General Electric Co. v.
Canadian Pac. Nav. Co.,* 8 Wash. 370, 36 Pac. 260, 40 Am.
St. 910, 24 L. R. A. 315; *La France Fire Engine Co. v. Mt.
Vernon,* 9 Wash. 143, 37 Pac. 287, 38 Pac. 80, 43 Am. St.
827; *Marble Sav. Bank v. Williams,* 23 Wash. 766, 63 Pac.
511; *Whitman Agricultural Co. v. Strand,* 8 Wash. 647, 36
Pac. 682; *Seymour v. Slide & Spur Gold Mines,* 153 U. S.
523, 14 Sup. Ct. 847, 38 L. Ed. 807; *Blodgett v. Lanyon
Zinc Co.,* 120 Fed. 893; *Tolerton & Stetson Co. v. Barck,*
84 Minn. 497, 88 N. W. 19; *Chattanooga etc. R. Co. v.
Evans,* 66 Fed. 809; *Jarvis-Conklin Mtg. Invest. Co. v. Will-
hoit,* 84 Fed. 514; *Buffalo Zinc & Copper Co. v. Crump,*
70 Ark. 252, 69 S. W. 572, 91 Am. St. 87; *Red River Lum-
ber Co. v. Children of Israel,* 7 N. D. 46, 73 N. W. 203.
Condemnation proceedings of a *de facto* corporation cannot
be questioned by the land owner. 10 Am. & Eng. Ency. Law
(2d ed.), 1059; *Brinkerhoff v. Newark etc. Traction Co.,*
66 N. J. L. 478, 49 Atl. 812; *Postal Telegraph Cable Co.
v. Oregon Short Line R. Co.,* 114 Fed. 787; *Oregon Short
Line R. Co. v. Postal Telegraph Cable Co.,* 111 Fed. 842;
*Farnham v. Delaware etc. Canal Co.,* 61 Pa. St. 265; *West
End Narrow Gauge R. Co. v. Almeroth,* 13 Mo. App. 91,
53 Am. Dec. 137; *Brown v. Calumet River R. Co.,* 125 Ill.
600, 18 N. E. 283; 1 Clark & Marshall, Private Corporations,
p. 239; *State ex rel. Morrell v. Superior Court,* 33 Wash.
542, 74 Pac. 686. The power company has the right to
change the place of diversion of the waters. *Union Mill Co.
v. Dangeberg,* 81 Fed. 115; *Sieber v. Frink,* 7 Colo. 148, 2
Pac. 901; *Offield v. Ish, supra;* 3 Farnham, Waters, p. 2095;
1 Morawetz, Corporations (2d ed.), §§ 320, 365; 1 Clark &
Marshall, Corporations, p. 385. The following are additional
late cases especially in point. *Brown v. Radnor Tp. Electric*

*L. Co.,* 208 Pa. St. 453, 57 Atl. 904; *City of LaHarpe v. Elm Tp. Gas Light etc. Co.,* 69 Kan. 97, 76 Pac. 448; *Borden v. Trespalacios Rice & Irr. Co.* (Tex. Civ. App.), 82 S. W. 461.

RUDKIN, J.—The respondent herein is a corporation, organized as a water power company and an electric power company, pursuant to the laws of the State of New Jersey, and has complied with the laws of the State of Washington respecting foreign corporations. The objects for which the respondent is incorporated, as set forth in its articles, are:

"To develop, adapt and utilize for commercial purposes the water power afforded by the White river and other rivers and streams and bodies of water in the State of Washington, by the diversion of a portion of the water of the said White river from a point on or near the line dividing Secs. 29 and 32, township 20, north, range 6 east of Willamette Meridian, Pierce county, Washington, by means of a ditch, flume or canal to the point or points of use, together with certain water rights, water and reservoir appropriations, land options and filings, to develop, adapt and utilize for commercial purposes the water power afforded by such other streams and bodies of water, and to construct, operate and maintain a plant or plants for the electric transmission of power, light and heat from such source or sources of power to all cities, towns and other places economically accessible from said source or sources of power, to erect, own and operate a plant or plants for furnishing light, heat and power in such cities, towns and places, and to furnish light, heat and power therein for any purpose to individuals, and public and private corporations and municipal bodies, to store, transport and sell water and water power and privileges for any purpose, in connection with such rivers, streams and bodies of water, to purchase, erect, own and operate water works in connection therewith, to erect and maintain dams, reservoirs, mills, manufactories and other erections and to operate the same, to buy, own and sell real estate in connection with said business."

The respondent proposes to erect and maintain a dam in the White river, near the town of Buckley, in Pierce county,

and thereby divert the water of said river into a canal, through which the same will be conducted to a reservoir at Lake Tapps. From this reservoir, the water will be conducted through a further canal to the brow of the hill, near the town of Sumner, and there discharged through steel pipes on to the water wheels in the power house to be constructed at the foot of the hill. In this power house, the respondent proposes to install electrical generators, and other electrical appliances, for the purpose of generating or manufacturing electricity, to the amount of 50,000 electrical horse power. The electricity thus generated will be transmitted north and south, to the cities of Puyallup, Tacoma, Olympia, Auburn, Kent, Seattle, and the cities en route to the Canadian line, and sold in these cities and places, for the use of the public in municipal and public lighting, the operation of street and other railways, manufactories, private lighting and heating, and for other public uses. In aid of this enterprise, the respondent filed its petition in the court below, whereby it sought to condemn and appropriate certain lands and property belonging to the relator and others. At the preliminary hearing, the court found that the proposed use was a public one, and that the appropriation was necessary, and ordered a jury empaneled to assess the damages. This order is now before us for review.

At the threshold of the proceeding, the respondent is confronted with the objection that it is seeking to take private property for a private use, in violation of section 16, art. 1, of the state Constitution. If this objection is sustained, it will obviate the necessity of discussing or considering the other questions presented in the briefs and arguments of counsel. The section of the Constitution in question declares that,

"Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes,

or ditches, on or across the lands of others for agricultural, domestic, or sanitary purposes."

The term "public use," when applied to the law of eminent domain, is not easily defined. It has often been said that it is more easily defined by negation than otherwise. In determining the question of public use, courts have always been influenced, to a greater or less extent, by legislative declarations, and by local customs and conditions, and local necessities. In the states of Maine, Massachusetts, New Hampshire, Connecticut, New Jersey, Indiana, Iowa, Kansas, Wisconsin, and perhaps others, statutes permitting lands to be taken for the purpose of creating water power for milling and manufacturing purposes have been enacted and enforced, though not always without protest. The legislature of the state of New York has never authorized the exercise of the right of eminent domain in favor of mills of any kind, and it has been said that "sites for steam-engines, hotels, churches, and other public conveniences, might as well be taken by the exercise of this extraordinary power." *Hay v. Cohoes Co.*, 3 Barb. 42. It is safe to say that the courts of that state would not sanction the exercise of the power of eminent domain for any such purpose. *In re Tuthill*, 163 N. Y. 133, 57 N. E. 303, 79 Am. St. 574, 49 L. R. A. 781. The courts of Michigan and Georgia have denied the right of eminent domain in similar cases. *Ryerson v. Brown*, 35 Mich. 332; *Loughbridge v. Harris*, 42 Ga. 500.

On the other hand, the courts of Alabama and Vermont have held that the right of eminent domain cannot be exercised in favor of gristmills, unless they are public mills, required by law to grind for all in due turn and for regular tolls. *Sadler v. Langham*, 34 Ala. 311; *Tyler v. Beacher*, 44 Vt. 648, 8 Am. Rep. 398. In *Head v. Amoskeag Mfg. Co.*, 113 U. S. 9, 5 Sup. Ct. 441, 28 L. Ed. 889, the court upheld the New Hampshire statute, as a

regulation of the manner in which the rights of proprietors of land adjacent to a stream may be ascertained and enjoyed with a due regard to the interest of all and the public good, but refused to pass upon the question whether the statute could be upheld as a delegation of the right of eminent domain. The courts of the mining and arid land states have also held that the use of water for mining and irrigation purposes is a public use.

The question is not a new one in this court. It was fully considered, in relation to another statute, in the case of *Healy Lumber Co. v. Morris,* 33 Wash. 490, 74 Pac. 681, 99 Am. St. 964. The court there cites with approval, Lewis, Eminent Domain, § 165,

"*Public use* means the same as *use by the public,* and this it seems to us is the construction the words should receive in the constitutional provision in question. The reasons which incline us to this view are: *First,* that it accords with the primary and more commonly understood meaning of the words; *second,* it accords with the general practice in regard to taking private property for public use in vogue when the phrase was first brought into use in the earlier constitutions; *third,* it is the only view which gives the words any force as a limitation or renders them capable of any definite and practical application. If the constitution means that private property can be taken only for use *by* the public, it affords a definite guide to both the legislature and the courts;"

from Cooley, Constitutional Limitations, p. 652,

"Nor could it be of importance that the public would receive incidental benefits, such as usually spring from the improvement of lands or the establishment of prosperous private enterprises; the *public use* implies a possession, occupation, and enjoyment of the land by the public at large, or by public agencies; and a due protection of the rights of private property will preclude the government from seizing it in the hands of the owner, and turning it over to

another on vague grounds of public benefit to spring from the more profitable use to which the latter may devote it;" and said,

"But from a consideration of all the authorities and from our own views on construction, we are of the opinion that the use under consideration must be either a use by the public, or by some agency which is quasi public, and not simply a use which may incidentally or indirectly promote the public interest or general prosperity of the state."

And again:

"It seems scarcely necessary to particularize to show to what extent this doctrine might practically be carried. Under such liberal construction, the brewer could successfully demand condemnation of his neighbor's land for the purpose of the erection of a brewery, because, forsooth, many citizens of the state are profitably engaged in the cultivation of hops. Condemnation would be in order for gristmills, and for factories for manufacturing the cereals of the state, because there is a large agricultural interest to be sustained. Tanneries, woolen factories, oil refineries, distilleries, packing houses, and machine shops of almost every conceivable kind, would be entitled to some consideration for the same reasons; thereby actually destroying any distinctions between public and private use, for the principle in one instance is the same as in the other; the difference is only in degree."

It will thus be seen that this court repudiated the broad and liberal construction adopted by the New Hampshire and other courts, and committed itself to the more restricted doctrine laid down by Judge Cooley in *Ryerson v. Brown,* and in his work on Constitutional Limitations, *supra.* In *Ryerson v. Brown,* the court, speaking through Chief Justice Cooley, said:

"Whether the use to which the machinery is to be put which is to be operated by the power can be declared a public use, is the question that remains to be considered. If the act were limited in its scope to manufactures which are of local necessity, as gristmills are in a new country not yet penetrated by railroads, the question would be some-

what different from what it is now.  But even in such
case it would be essential that the statute should require
the use to be public in fact; in other words, *that it should
contain provisions entitling the public to accommodations.*
A flouring mill in this state may grind exclusively the wheat
of Wisconsin, and sell the product exclusively in Europe;
and it is manifest that in such a case the proprietor can
have no valid claim to the interposition of the law to com-
pel his neighbor to sell a business site to him, any more
than could the manufacturer of shoes or the retailer of
groceries.   Indeed, the two last named would have far
higher claims, for they would subserve actual needs, while
the former would at most only incidentally benefit the
locality by furnishing employment and adding to the local
trade."

And again:

"What, then is the necessity for the exercise of this ex-
traordinary power in aid of manufacturing corporations?
It is certainly not a necessity of the extreme sort which sup-
ports the like authority in aid of railways.   A railway
cannot run around unreasonable land-owners; but no one
man and no number of men can prevent the establishment
of a machine shop, or a sawmill, by refusing to part with
the lands they may happen to own.   No particular motive
power is indispensable.   At the worst the question presented
in any case will be a question of different degrees of con-
venience or of probable profits.   A mill at one spot on a
stream may be more profitable than at another; a machine
shop at one point may be more cheaply operated by water
power than by steam power; but steam is not excluded from
any part of the state because of any general conviction that
water power is more advantageous or more economical.
When the owner of a mill site enters upon the calculation
whether he shall improve the site in order to obtain opera-
ting power for machinery, or on the other hand provide steam
machinery, the question that confronts him is not one of
necessity, but of comparative cost, expense of operation and
probable returns."

In *Varner v. Martin,* 21 W. Va. 534, the court holds that
before a corporation can exercise the right of eminent do-
main it must possess each and all of these qualifications:

"First, *the general public must have a definite and fixed use of the property to be condemned, a use independent of the will of the private person or private corporation in whom the title of property when condemned will be vested; a public use which cannot be defeated by such private owner, but which public use continues to be guarded and controlled by the general public through laws passed by the legislature;* second, this public use must be clearly a needful one for the public, one which cannot be given up without obvious general loss and inconvenience; third, it must be impossible, or very difficult at least, to secure the same public uses and purposes in any other way than by authorizing the condemnation of private property."

The court further says:

"Upon the principles we have laid down it would follow that the legislature could not authorize lands to be condemned for the erection of dams, or for the overflowing of lands by dams erected for sawmills or manufactories generally, because they obviously want the first qualification we have laid down as necessary to confer this power on the legislature. The general public have no definite and fixed use of any such mills and manufactories. They have no use of them which is independent of the will of the owners of such mills and manufactories, and they can be defeated in any sort of use of such mills and manufactories at the pleasure of the owner of them."

In *Fallsburg Power & Mfg. Co. v. Alexander,* 101 Va. 98, 43 S. E. 194, 99 Am. St. 855, the court of appeals of Virginia approved the rule announced by the supreme court of West Virginia, and applied it in a case very similar to the case at bar. The court quoted extensively from the decisions followed by this court in the *Healy Lumber Company* case, and held that the proposed use was not a public one. Speaking of the company and its objects, in that case, the court said:

"It is urged upon us that, although the charter in question does not command the performance of the company's public duties, since it is 'a public service corporation,' the right of public control arises from the grant of the franchise of eminent domain; and, when the company undertakes to

devote its property and its products to the public use, it becomes subject to public regulations. This proposition is unquestionably sound, and sustained by the authorities cited,—*Munn v. Illinois,* 98 U. S. 113; *Budd v. People of New York,* 143 U. S. 538; *Brass v. North Dakota,* 153 U. S. 391,—to which many others might be added; but, this does not meet the difficulty in this case. The mere recognition of the corporation in its charter as an 'internal improvement company' does not make it so, and bring it within the operation of the general laws of the state governing such companies and controlling their operations. The difficulty with the charter is that the purpose for which the property is authorized to be taken by the right of eminent domain in this instance does not clearly appear to be for a public use or a public purpose. On the contrary, the grounds of public benefit upon which the taking is proposed are vague, and the use which the public is to have of the property, or how the public is to be benefited by the use of it by the company, is by no means fixed and definite. Not only is the public benefit to spring from the use to which the company proposes to devote the property vague, indefinite, and uncertain, but, under the plain language of the charter, the public use of the property, or any use of it by the public, may be gainsaid or denied or withdrawn by the company at its will, since it is authorized to use, not only a part, but the entire product of the work or works it proposes to establish for its own use or benefit. In such a case the private benefit too clearly dominates the public interest to find constitutional authority for the exercise of the power of eminent domain, and is the equivalent of taking of private property for a private use, against the will of the owner, which cannot be done in any case."

This is equally true of the respondent company. It is not claimed that there is a present demand for the 50,000 electrical horse-power. It is not claimed that the respondent has a franchise to enter any of the cities or towns mentioned, or that it will or can obtain one. It does not appear that there are any street or other railways to utilize its product. It is not under contract or obligation to furnish electricity to any person, or for any purpose. Under its articles, it

may erect and maintain mills and manufactories and operate the same. For aught that appears, aside from its professions and voluntary promises, it may take the relator's property, generate electricity or not, at will, and use the same for any purpose, public or private, to suit its convenience. In *Board of Health v. Van Hoesen*, 87 Mich. 533, 49 N. W. 894, 14 L. R. A. 114, the court said:

"To justify the condemnation of lands for a private corporation, not only must the purpose be one in which the public has an interest, but the state must have a voice in the manner in which the public may avail itself of that use. In *Gilmer v. Lime Point*, 18 Cal. 229, a public use is defined to be a use which concerns the whole community, as distinguished from a particular individual. The use which the public is to have of such property must be fixed and definite. *The general public must have a right to a certain definite use of the private property on terms and for charges fixed by law, and the owner of the property must be compelled by law to permit the general public to enjoy it.* It will not suffice that the general prosperity of the community is promoted by the taking of private property from the owner and transferring its title and control to a corporation, to be used by such corporation as its private property, uncontrolled by law as to its use; in other words, *a use is private so long as the land is to remain under private ownership and control, and no right to its use or to direct its management is conferred upon the public.*"

It is true, the supreme court of New Hampshire fully sustained the doctrine contended for by the respondent, in the case of *Rockingham County L. & P. Co. v. Hobbs*, 72 N. H. 531, 58 Atl. 46. But that decision was the natural outgrowth of a long line of decisions in the same court, which this court expressly declined to follow in the *Healy Lumber Company* case.

It is further contended by the respondent that the use in question is declared to be public by art. 21 of the state Constitution, which reads: "The use of the waters of this state for irrigation, mining and manufacturing purposes

shall be deemed a public use." We are not called upon, at
this time, to determine the full import or meaning of this
constitutional provision. What we have already said dis-
poses of the question before us. If it was intended by the
article in question to extend the right of eminent domain
to private manufacturing corporations, or to authorize the
taking of private property for a private use, it violates the
due process clause of the Federal Constitution. A state is
powerless, by statute or by constitutional provision, to de-
clare a use public which is essentially and inherently private.
In *Kaukauna Water Power Co. v. Green Bay etc. Canal Co.,*
142 U. S. 254, 12 Sup. Ct. 173, 35 L. Ed. 1004, the court
said:

"The improvement of the navigation of a river is a public
purpose, and the sequestration or appropriation of land or
other property, therefore, for such purpose, is doubtless a
proper exercise of the authority of the state under its power
of eminent domain. Upon the other hand, it is probably
true, that it is beyond the competency of the state to appro-
priate to itself the property of individuals for the sole pur-
pose of creating a water power to be leased for manufacturing
purposes. This would be a case of taking the property of
one man for the benefit of another, which is not a constitu-
tional exercise of the right of eminent domain."

In *Missouri Pac. R. Co. v. Nebraska,* 164 U. S. 403, 17
Sup. Ct. 130, 41 L. Ed. 489, the court said:

"This court, confining itself to what is necessary for the
decision of the case before it, is unanimously of opinion,
that the order in question, so far as it required the railroad
corporation to surrender a part of its land to the petitioners,
for the purpose of building and maintaining their elevator
upon it, was, in essence and effect, a taking of private prop-
erty of the railroad corporation, for the private use of the
petitioners. The taking by a state of the private property
of one person or corporation, without the owner's consent,
for the private use of another, is not due process of law, and
is a violation of the Fourteenth Article of Amendment of
the Constitution of the United States."

In *Clark v. Nash,* 198 U. S. 361, 25 Sup. Ct. 676, 49 L. Ed. 1085, a statute of Utah, authorizing the taking of private property for an irrigation ditch, was upheld by a divided court, but the use was held to be a public one. The court said:

"But we do not desire to be understood by this decision as approving of the broad proposition that private property may be taken in all cases where the taking may promote the public interest and tend to develop the natural resources of the state. We simply say that in this particular case, and upon the facts stated in the findings of the court, and having reference to the conditions already stated, we are of opinion that the use is a public one, although the taking of the right of way is for the purpose simply of thereby obtaining the water for an individual, where it is absolutely necessary to enable him to make any use whatever of his land, and which will be valuable and fertile only if water can be obtained."

There is, however, a vast difference between the use of water for manufacturing and for irrigation. In the latter case, there is no choice of means or location. The necessity is an absolute one, if the land is to be reclaimed at all. Not so, with a manufacturing plant. The question of location and motive power is one of economy and convenience at most. In *In re Tuthill, supra,* the court said:

"I do not believe that the people of the state can affect, or impair, the obligation of the social compact by adopting as a part of the organic law a provision which will permit of the taking of private property for a purpose which is essentially a private benefit, and which has always been held to be such."

In that case the court declared a provision of the constitution of the state of New York, authorizing the taking of private property for drains, invalid, because in conflict with the Constitution of the United States.

From a full review of all the authorities, we are convinced that the respondent is not a public service corporation, and that the use to which it intends to apply the property it now

seeks to acquire is not a public use, within the meaning of
the Constitution and laws of this state. We do not mean
to say that the right of eminent domain can, in no case, be
extended to a corporation organized for the purpose of gen-
erating and transmitting electricity for power and other
purposes. But before this can be done, public necessity
must require it, and the right of the public to the use
and enjoyment of the property must be regulated, guar-
anteed, and safe-guarded by proper legislation.

For the reasons herein stated, the order must be reversed,
with directions to dismiss the proceedings, and it is so
ordered.

MOUNT, C. J., FULLERTON, CROW, HADLEY, and DUNBAR,
JJ., concur.

ROOT, J., having been of counsel for interested parties,
took no part.