## WALKER v. SHASTA POWER CO.

(Circuit Court of Appeals, Ninth Circuit.   February 3, 1908.)

No. 1,501.

1. EMINENT DOMAIN—"PUBLIC USE"—ELECTRICITY.

The taking of land for a right of way for a ditch and a flume to convey water used in furnishing electricity to the public generally or to all persons within a county or elsewhere in the state for lighting, power, and heating purposes is a public use within Code Civ. Proc. Cal. § 1238, and Civ. Code, § 1001, authorizing the exercise of the right of eminent domain in behalf of certain public uses.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 80.

For other definitions, see Words and Phrases, vol. 6, pp. 5825–5837; vol. 8, p. 7774.]

2. SAME—DESIGNATION OF PUBLIC USE—LEGISLATIVE AUTHORITY.

The Legislature cannot make that a public use which is essentially a private use, and the question whether a use is public in its nature is a judicial question; but generally, where it is uncertain whether the use is of a public or private character, the legislative determination of the question is of persuasive force, and the courts will not disturb it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 165–167.]

3. SAME—ARTICLES OF INCORPORATION—EFFECT.

The question whether the exercise of the right of eminent domain is to be denied a corporation is not to be tested solely by the description of the objects and purposes set forth in the articles of incorporation.   It may be governed by evidence aliunde showing the actual purposes in view.

4. SAME—PRIVATE AND PUBLIC USES COMBINED—EFFECT ON RIGHT OF EMINENT DOMAIN.

That a corporation purposes to engage in a private use in addition to serving a public use does not deprive it of the right to exercise eminent domain for the public use.

5. SAME—EVIDENCE—ADMISSIBILITY.

In a proceeding to condemn land for a right of way for a ditch and a flume to conduct water to be used in furnishing electricity to the public, defendant could not show that there was no water subject to appropriation by complainant in the creeks from which it purposed to conduct water to the ditch and the flume, where defendant had not put in issue complainant's allegation that it owned 3,000 inches of water, the denial that complainant owned or was entitled to 3,000 miner's inches or any water to be conducted or that could be conducted by the plaintiff by means of its ditch or flume not putting in issue the allegation that complainant owned the water which it claimed to have appropriated, and where the question of the rights of the other appropriators of the water was not before the court, the owners of such rights not being parties to the suit.   The use intended to be subserved being a public one, complain-

ant could. if necessary, institute suits to recondemn the rights of other appropriators.

In Error to the Circuit Court of the United States for the Northern District of California.

For opinion below, see 149 Fed. 568.

The defendant in error. a corporation organized under a general corporation act, assumed in its articles the following, among other powers: "To sell. furnish and deal in electric light, heat and power, and to dispose of such portions thereof, as may not be used by the corporation, to cities, towns, villages. public and private corporations, political subdivisions and individuals: to locate, claim, divert, and otherwise acquire water and water rights under the laws of the state of California, and under the laws of any other state or territory of the United States for any and all purposes; to construct, acquire and maintain ditches, dams, pipes, pipe lines, tunnels, levees, viaducts, bridges, embankments, and excavations. to, across, and from any water course, lake, stream, or waterway, and to sell. lease, grant, or otherwise dispose of so much of the water or water rights thus secured, controlled, or appropriated, as may not be used by this corporation, to other persons or corporations by special contracts or otherwise." Prior to the organization of the defendant in error, Joseph A. Rossi had posted and filed notices of the appropriation of water: of Hat creek, Lost creek, and Bear creek, all in Shasta county, Cal., and thereafter Rossi conveyed his rights in said water to the corporation, and the corporation commenced to construct and continued to construct, ditches, flumes, and other works necessary to divert and appropriate the water. A part of the work was the construction of a ditch and flume more than 12 miles long, the line of which crosses a portion of the lands of the plaintiff in error. The defendant in error obtained from the city of Redding, a city of more than 5,000 inhabitants. and from the county of Shasta, licenses to erect poles, stretch wires, and other appliances for the purpose of conducting and transmitting electricity for power, light, and other necessary and useful purposes, over, along, and upon the streets, alleys, and avenues of the city of Redding, and the roads, bridges, and public highways of Shasta county. It constructed a power house and installed therein machinery sufficient to generate electricity by the use of the water to the extent of more than 2,000 horse power, and constructed a pole line about 27 miles in length for the purpose of transmitting the electricity thus generated to a substation which it had constructed in the city of Redding. In the substation it had installed machinery and had extended pole lines therefrom throughout the city of Redding for the purpose of distributing electricity. It commenced the present suit for the purpose of condemning a right of way for its ditch and flume over the lands of the plaintiff in error. It alleged in the bill that its purpose was to supply by means of electricity and electric power the necessary public needs in the county of Shasta and elsewhere in the state of California for light, heat, and power, and to supply a necessary public use as aforesaid; that it would be impossible to utilize its water for said necessary public use except by taking the same out of Bear creek, and conducting the same, by means of its ditch, along its surveyed and established ditch line, over and across the land of the plaintiff in error, and further alleged that a large part of the public in general and a large proportion of the inhabitants and citizens, residents, householders, and freeholders within the county of Shasta and elsewhere in the state of California, are not supplied with electricity or electric current for heat, light, or power, and the supplying of electricity and electric current for heat, light, and power to the public in general, and to the inhabitants. citizens, residents, householders, and freeholders within the county of Shasta and elsewhere in the state of California, is and was at all of the times therein mentioned a public necessity, and that the right of way over the said land of said defendant T. B. Walker sought to be condemned is necessary for said public use. The answer denied on information and belief that the defendant in error was organized for the purpose set forth in the complaint, and denied upon information and belief that its purpose was "to generate or transmit or furnish electricity or electric current to the public in general or to all inhabitants or per-

sons within the county of Shasta or elsewhere in the state of California for the necessary public use or use of light or power or heat," and alleged that the plaintiff in error "believes, and upon information and belief alleges, that it is the purpose of the corporation to sell electricity and electric current to such persons as the board of directors shall deem proper," etc.; "that it is not the purpose of said plaintiff to furnish electricity or electric current to every individual member of the community in the county of Shasta, or any community, who shall demand or request the delivery thereof, but that said corporation only proposes to deliver electricity and electric current which it does not use itself, and to deliver such portions which it does not use itself only to such persons and in such locality and in such manner as the board of directors of said plaintiff shall deem proper." Upon the issues and evidence the court found as facts, among others, that the defendant in error, immediately after its organization in 1904, acquired the right to divert and use 3,000 inches measured under a four-inch pressure of the waters of Hat creek and other creeks in the county of Shasta, and commenced the construction of its ditches as alleged in the bill, and as set forth in the statement of the facts: "that said plaintiff is not engaged in any private business, nor has it for its own private purposes any use for any of said electricity except such as may be necessary for the heat and light of its said works, which are incidental to the said public use aforesaid; that it is necessary for said plaintiff to conduct water by means of said ditches, flumes, and pipe lines at large expense as above found to its said water house, and to use the said water to operate such machinery for the purpose of supplying the public of said Shasta county as hereinbefore found, and for such public uses as hereinbefore found." The court decreed to the defendant in error a right of way for its ditch across the lands of the plaintiff in error upon payment to him of the sum of $742.30 and the costs of suit.

The final order of condemnation recites: "It is hereby ordered, adjudged, and decreed that the strip of land hereinafter described being the land described in the complaint herein as sought to be taken by the plaintiff be and the same is hereby finally condemned for the use of plaintiff for a right of way for the ditch described in the complaint herein, and for the purpose of construction, maintenance and operation thereon of said ditch and the running of water therein, and for the purpose of using the same by plaintiff in the construction, maintenance of said ditch, and the running of water across the said land of said defendant in the said ditch, solely for the public use described in said complaint and the findings and judgment heretofore made and entered herein." Upon the trial there was no evidence showing, or tending to show, that the defendant in error was engaged in any private business or intended to engage therein. It offered to prove as part of its case that it did not intend to engage in any private business, and it adduced testimony that it had not erected any works or engaged in any private enterprise to use any portion of the power, light, or heat. On the trial, for the purpose of showing that it had deprived itself of the power to engage in the private enterprise permitted by its articles of incorporation, it offered in evidence amended articles of incorporation which it had adopted since the commencement of the suit, in which it had eliminated from its powers the power to engage in any private enterprise whatever. Objection to such evidence was made on the ground that the amendment was made subsequent to the commencement of the suit, and the objection was sustained. The allegations of the bill that a large part of the public in general, and a large portion of the citizens, residents, householders, and freeholders within the county of Shasta and elsewhere in the state of California, were not supplied with electricity or electric current for light, heat or power, and that the supplying of the same for such purposes to the public in general and to the inhabitants, citizens, etc., within the county of Shasta and elsewhere in the state of California, was at all of the times mentioned a public necessity, was denied in the answer.

Reid & Dozier and A. E. Bolton, for plaintiff in error.

Solinsky & Wehe and Brainard & Kimball, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The question first to be determined is whether the use for which condemnation is sought is a public use. Section 1238 of the Code of Civil Procedure of California makes provision for the exercise of the right of eminent domain in behalf of public uses, and enumerates among other public uses the following:

"Canals, reservoirs, dams, ditches, flumes, aqueducts and pipes for supplying and storing water for the operation of machinery for the purpose of generating and transmitting electricity for the supply of mines, quarries, railroads, tramways, mills and factories with electric power; and also for the supplying of electricity to light or heat mines, quarries, mills, factories, incorporated cities and counties, villages and towns; and also for furnishing electricity for lighting, heating or power purposes to individuals or corporations, together with lands, buildings and all other improvements in or upon which to erect, install, place, use or operate machinery for the purpose of generating and transmitting electricity for any of the purposes or uses above set forth."

There can be no doubt that within this provision the furnishing of electricity as it is proposed to be furnished by the defendant in error is a use for which the Legislature intended that the right of eminent domain might be exercised. The purpose of the statute is to remove obstacles in the way of development and progress in the state, and it is in harmony with the Constitution and with section 1001 of the Civil Code which gives to any person, without further legislative action, the power to acquire property for any of the uses specified in section 1238, "either by the consent of the owner or by proceedings had under the provisions of title 7, part 3 of the Code of Civil Procedure; and any person seeking to acquire property for any of the uses mentioned in said title, is an agent of the state or a person in charge of such use within the meaning of these terms as used in such title."

The Legislature cannot by its enactments make that a public use which is essentially a private use, and the question whether the use is public in its nature is a judicial question to be determined by the courts. But it is the general rule that, where it is uncertain and doubtful whether the use to which the property is proposed to be devoted is of a public or a private character, the legislative determination of the question is of persuasive force, and the courts will not undertake to disturb the same. It has been so held in California. Lux v. Haggin, 69 Cal. 255, 4 Pac. 919, 10 Pac. 674; In re Madera Irrigation District, 92 Cal. 296, 28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106; County of San Mateo v. Coburn, 130 Cal. 631, 63 Pac. 78, 621. And it has been generally held by the courts that the generation of electric power for distribution and sale to the public on equal terms is a public enterprise, and that water used for that purpose is devoted to a public use. Light & Power Co. v. Hobbs, 72 N. H. 531, 58 Atl. 46, 66 L. R. A. 581; Hollister v. State, 9 Idaho, 8, 71 Pac. 541; Grande Ronde Electrical Co. v. Drake, 46 Or. 243, 78 Pac. 1031; In re Niagara L. & O. Power Co. (Sup.) 97 N. Y. Supp. 853; Minnesota Canal & Power Co. v. Koochiching, 97 Minn. 429, 107 N. W. 405. In the case last cited the Supreme Court of Minnesota said:

"Electric lighting is universally recognized as a public enterprise, in aid of which the right of eminent domain may be invoked."

In Light & Power Co. v. Hobbs, 72 N. H. 531–535, 58 Atl. 46, 66 L. R. A. 581, the court said:

"Like water, electricity exists in nature in some form or state, and becomes useful as an agency of man's industry only when collected and controlled. It requires large capital to collect, store, and distribute it for general use. The cost depends largely upon the location of the power plant. A water power having a location upon tide water reduces the cost materially. It may happen that the business cannot be inaugurated without the aid of the power of eminent domain, or acquisition of necessary land or rights in land. All these considerations tend to show that the use of land for collecting, storing, and distributing electricity for the purposes of supplying power and heat to all who may desire it is a public use similar in character to the use of land for collecting, storing, and distributing water for public needs—a use that is so manifestly public that it has been seldom questioned, and never denied."

But both private purposes and public uses are contemplated in the articles of incorporation of the defendant in error, as those articles stood at the time of the commencement of the suit. On that ground its power to exercise the right of eminent domain for the promotion of the public purposes is challenged, the contention being that, when such purposes are so blended, the want of power to exercise the right of eminent domain for the private purpose excludes its exercise for any public use. But the question whether the exercise of the right of eminent domain is to be denied or withheld is not to be tested solely by the description of the objects and purposes set forth in the articles of incorporation. It may be governed by evidence aliunde showing the actual purpose in view. Matter of Niagara Falls & Whirlpool R. Co., 108 N. Y. 375, 15 N. E. 429. "The fact that the charter powers of a corporation to which the power of eminent domain has been delegated embrace both private purpose and public use does not deprive it of the right of eminent domain in the promotion of the public use." 15 Cyc. 579; Lake Koen Nav. I. & R. Co. v. Klein, 63 Kan. 484, 65 Pac. 684; Cole v. County Commissioners, 78 Me. 532, 7 Atl. 397; Brown v. Gerald, 100 Me. 351, 61 Atl. 785. Cases are cited which are said to hold the contrary; but they are all cases in which there is absence of proof of the actual purpose of the plaintiff in the condemnation proceedings to sever the public use from the private use, and to exercise the right of eminent domain solely for the former. Thus in Fallsburg Power & Mfg. Co. v. Alexander, 101 Va. 98, 43 S. E. 194, 61 L. R. A. 129, 99 Am. St. Rep. 855, the corporation was created by a special act of the General Assembly and given authority to manufacture and generate electrical or other power, light, or heat, and utilize and transmit and distribute the same to any place or places for its own use or for the use of other individuals and corporations. The company proceeded to condemn lands and water rights for that purpose "for the company's use or for the use of other individuals or corporations." The court held that since it had power under its charter to devote only a share, or none at all, of its products to public use, the public could not be said to have such a definite right to the use of its product as to render constitutional the provision giving it the right of eminent domain. Said the court:

"In such a case the private benefit too clearly dominates the public necessity to find constitutional authority for the exercise of the power of eminent domain, and it is the equivalent of taking of private property for a private use."

So in Berrien Springs Water P. Co. v. Berrien Circuit Judge, 133 Mich. 48, 94 N. W. 379, 103 Am. St. Rep. 438, the plaintiff in the condemnation suit was incorporated under an act which authorized it to acquire water rights and water for private and public purposes. In its petition for condemnation it alleged that it required certain lands "for the purposes of its incorporation, and that the taking thereof is necessary for the public use and benefit." The court denied the right of condemnation, saying:

"After the water power is erected, though it may be used for a public purpose, relator has the option to use it entirely for private purposes."

But in that case the court sustained the doctrine that land can be taken under the power of eminent domain for a legitimate purpose, even though a private purpose will be thereby incidentally served. In Gaylord v. Sanitary District, 204 Ill. 576, 68 N. E. 522, 63 L. R. A. 582, 98 Am. St. Rep. 235, the petitioner in condemnation proceedings alleged in his petition that he was about to build a public gristmill under an act of the Legislature authorizing the condemnation of private property for the purpose of public mills and machinery other than public gristmills, and that he was also about to construct other machinery and operate the mill and other public machinery. The court held that, to constitute a public use such as will justify the taking of private property, the contemplated improvement must be one which the public to some extent will have a right to use, and not one which is merely a benefit to the public, and that authority to condemn private property for public use does not justify the taking of such property for a public and also a private use. Of similar import are Attorney General v. Eau Claire, 37 Wis. 400, and State ex rel. Harris v. Superior Court, 42 Wash. 660, 85 Pac. 666, 5 L. R. A. (N. S.) 672. In the latter case the testimony was to the effect that the condemnation was sought for the purpose of obtaining additional power, "not only for use in operating the light plant and electric car system, but for the purpose of selling power to the different manufactories and for different purposes." The court held that for all these purposes the petitioner was not entitled to exercise the right of eminent domain, since the use was not a public one. We find no case which holds that the bare fact that a corporation has in enumerating its functions expressed a purpose of engaging in a private enterprise as well as serving a public use shall deprive it of the right to exercise eminent domain for the public use. Not only is there no authority for such a proposition, but there is no reason for it. Why should the fact that the defendant in error here was incorporated under articles giving it the power to serve a private use be an obstacle to its condemnation of property necessary, and which it proposes and proves shall be used exclusively for a public service? The fact that it has such power imposes no greater or additional burden or servitude upon the property which it seeks and proposes to take for the public use only.

On the trial the plaintiff in error offered to prove the rights of others to use for irrigation the waters of Hat creek and Lost creek, and to show that under the appropriation of the defendant in error there was no water subject to appropriation. This evidence was excluded as irrelevant and immaterial, and we find no error therein. In the first place, the plaintiff in error had not put in issue the allegation of the bill that the defendant in error was the owner of 3,000 inches of water. The denial was "that the plaintiff in error is the owner, or ever was the owner of, or entitled to, 3,000 miner's inches or any water or waters which are to be conducted by plaintiff, or can be conducted by plaintiff, by means of its ditch or flume or at all into Bear creek." This did not put in issue the allegation that the defendant in error was the owner of the water which it claimed to have appropriated. Again, if an issue had been raised upon that allegation, the question of the rights of other appropriators of the water was not before the court. The owners of such rights were not parties to the suit. The use intended to be subserved through the condemnation proceedings being a public use, the defendant in error could, if necessary, institute further suits for the condemnation of the rights of other appropriators.

We find no error for which the judgment should be reversed. It is accordingly affirmed.