[No. 9969.   Department One.   October 14, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Lyle Light, Power & Water Company, Plaintiff,* v. THE SUPERIOR COURT FOR KLICKITAT COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—PUBLIC USE—FUTURE AND PRESENT NEEDS—SURPLUS POWER—PRIVATE USE. A power and water company may condemn property for the public purposes of municipal lighting and of electric railways, notwithstanding it seeks to avail itself of Rem. & Bal. Code, § 4974, granting it the right to use for private purposes electricity generated for public purposes if at any time there should be a surplus of power not needed for public purposes; since it may anticipate future as well as present public needs, where it acts in good faith and seeks no excessive or unreasonable appropriation.

SAME—PUBLIC USE— SURPLUS POWER — EVIDENCE — SUFFICIENCY. Sufficient public necessity for condemnation is shown where an electric light and power company having agreed to furnish power to a town and an electric railway company, and contemplating other contracts for power for public purposes only, sought to condemn to develop ten thousand horse power, although but a small part of such power was needed for the contracts already secured.

Certiorari to review a judgment of the superior court for Klickitat county, McKenney, J., entered October 4, 1911, adjudging a public use and necessity, in proceedings to condemn land for an electric power plant.   Affirmed.

*W. G. Drowley* (*R. Sleight*, of counsel), for relator.

*Williams, Wood & Linthicum* and *N. B. Brooks* (*Erskine Wood* and *M. M. Matthiessen*, of counsel on the brief), for respondent Northwestern Electric Company.

CROW, J.—The Northwestern Electric Company, a public service corporation, as petitioner, instituted an action in the superior court of Klickitat county against Lyle Light, Power & Water Company, also a public service corporation, and other claimants, to condemn and appropriate a strip of land

[1]Reported in 127 Pac. 104.

about 300 feet in width and 1,200 feet in length, at first along the westerly bank of the Klickitat river, and thereafter crossing the river and upon its easterly bank, for the purpose of constructing a flume and other works which it is alleged are necessary to the installation and maintenance of an electric plant for generating light and power for public uses. The trial court adjudged the taking of the property to be necessary, and that the uses to which the petitioner intends to devote the same are public. Upon the application of Lyle Light, Power & Water Company as relator, the cause was thereupon transferred to this court by writ of certiorari for a review of the order thus made.

Relator contends that the articles of incorporation of the respondent Northwestern Electric Company do not authorize it to appropriate property by an exercise of the right of eminent domain, as such articles do not meet the requirements of § 1, ch. 151, Laws 1907, page 349 (Rem. & Bal. Code, § 4974), under which section relator insists respondent is proceeding and must proceed. The objects and purposes for which the respondent has been organized, as disclosed by its articles of incorporation, are diverse, some being of a public and others of a private nature. Its objects pertaining to the public service, as stated in the articles, in part are:

"(1) To develop, generate and furnish electricity for the purposes of supplying cities, towns, villages, municipal corporations, communities and the inhabitants thereof, with light and with electricity for lighting purposes.

"(2) To develop, generate and furnish electricity for the purpose of supplying cities, towns, muncipal corporations and communities with heat, and with power for heating purposes.

"(3) To develop, generate and furnish electricity for the purpose of supplying heat, light or power to any public corporation for any public purpose or public use whatsoever.

"(4) To supply cities, towns, villages, communities, municipal and other public corporations, and the inhabitants thereof, with light, and to utilize electricity for any public use, including heating, lighting and power.

"(5)    To develop, generate and furnish electricity for any public use.

"(6)    To supply cities, towns, villages, communities, municipal and other public corporations, and the inhabitants thereof, with gas for lighting or for any other purpose which is or will be a public use.

"(7)    To supply cities, towns, villages and communities, municipal corporations, and the inhabitants thereof, with water, and for any such purpose to purchase or otherwise acquire, erect, own and operate water works.

"(8)    In respect to all or any of the foregoing purposes, to discharge all the duties of a public service corporation, and to receive tolls and compensation in respect to all or any of such purposes, all subject to such regulations as may now or hereafter be prescribed by law.  .  .  .  "

Respondent contends, (1) that it is not compelled to rely upon the act of 1907 for its right to condemn; (2) that it only seeks to avail itself of the incidental authority conferred by that statute, so that it may sell for private use such surplus power as it may generate and not need for public purposes; and (3) that by subdivision 8 of the objects above quoted from its articles of incorporation, it has substantially complied with the requirements of the act.  We think these contentions must be sustained.  Prior to the enactment of the law of 1907, this court held that, when the purposes of a corporation are both public and private, and it seeks condemnation for public purposes only, its power to exercise the right of eminent domain will be sustained, and that if it should thereafter attempt to use for private purposes the property taken, the right and authority to prevent such an abuse or wrongful act rests in the supervising and controlling power of the state.  *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.*, 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198.  In the case cited we said:

"But while the exercise of this right of eminent domain must be guarded jealously, so that the private property of one person may not be taken for the private use of another, after all is said and done, the power to prevent property

taken for a public use from being subsequently diverted to a private use must rest rather in the supervisory control of the state than in caution in permitting the exercise of the power.    Property taken for a public use by a corporation organized solely to promote a public business may be as easily diverted by it to a private use, as it may by one having both public and private objects.    It is not the object for which a corporation is formed that prevents it from wrong-doing.    The preventive rests in the power of the state to compel it to lawfully exercise its granted privileges."

After the enactment of the statute of 1907, this court, in *State ex rel. Dominick v. Superior Court*, 52 Wash. 196, 100 Pac. 317, 21 L. R. A. (N. S.) 448, held that, when a corporation in good faith seeks to condemn property for the public uses of municipal lighting and of electric railways, and seeks to avail itself of the provisions of the act of 1907, granting it the right to use for private purposes electricity generated for public purposes and not needed therefor, condemnation for the public purposes will be allowed irrespective of the provisions of the act.    As we understand respondent's position, it in good faith seeks condemnation in order that it may generate and sell power for public uses only; but if at any time there should be a surplus of the power thus generated, it further desires to devote that surplus to private uses rather than permit its waste until such time as it may be needed for public uses only.    This court, in *Dominick v. Superior Court, supra*, after quoting § 1 of the Laws of 1907, p. 349, observed:

"It is questionable whether the legislature intended by this act to merely enlarge or extend the uses that might be made of electricity generated for public purposes and not needed therefor, or whether it intended to enlarge the power of eminent domain itself.    If the former was intended, the act would seem to be entirely free from constitutional objection, while in the latter case the validity of the act would be very questionable, under previous rulings of this court. But we do not feel called upon to determine that question in this case, for it does not appear that the respondent is at-

tempting to acquire any property by virtue of the provisions of the act of 1907. It simply seeks to avail itself of the provisions of that act in order that it may use electricity generated for public purposes and not needed therefor, in the manner therein provided."

The legislature could not declare that any particular use is or is not public, that being a judicial question under § 16, art. 1, of the constitution. The only valid purpose of the statute was to confer upon the public service corporations mentioned temporary or incidental authority to devote to private uses any excess electric power generated in good faith for public uses but not needed therefor, and which would otherwise go to waste. The statute does not confer, nor could it confer, upon any public service corporation the right to condemn property for private purposes. It is manifest that any public service corporation, when installing an electric plant, must anticipate future as well as present needs of the public, and it may condemn private property with such future needs in view. If this could not be done, the logical result would be that, every time it secured additional public service contracts or was called upon to furnish additional power for an undoubted public use, it would be compelled to institute further condemnation proceedings, acquire additional property, enlarge its plant, increase its output, and thus meet the increased demands for public use. That such a procedure would be unbusinesslike and impracticable was recognized in *Tacoma v. Nisqually Power Company*, 57 Wash. 420, 107 Pac. 199, where we said:

"The supreme court of the United States, while strictly adhering to the rule that private property may not be taken for private use, sees nothing objectionable in permitting the state of Wisconsin, which under legislative act reserved to itself the water power created by a dam over the Fox river, to dispose of some of its surplus water for private use, as there was no need of such surplus water running to waste and the state might thus reimburse itself for the expense of the improvement. *Kaukauna Water Power Co. v. Green Bay & M.*

*Canal Co.*, 142 U. S. 254. In the note to *Wisconsin River Improvement Co. v. Pier* (137 Wis. 325, 118 N. W. 857), 21 L. R. A. (N. S.) 538, at page 543, it is said in speaking of this incidental private use: 'The principle that an incidental private use will not defeat the exercise of the power of eminent domain is also to be found stated in many cases not falling within the scope of this note, for the reason that the incidental private use, so called, was merely the prospective enjoyment of the same character by a private individual, but in a greater degree than the general public, and not the enjoyment of a use distinct from that which the public could share.' In the *Harris* case, *supra* [42 Wash. 660], in which this court withheld the power of eminent domain, it was shown that the power was required to furnish lights to the cities of Olympia and Tumwater, to run electric cars between those two cities, and also to sell power to manufactories. Here there was a manifest combination of public and private use, and both uses were principal uses. In the case before us now, it is apparent from the evidence, which must be the controlling feature, that the city's need of the power it seeks is a strictly municipal and public use, and that it is not seeking in its requirement of 20,000 horsepower, more than it will in the near future be required for a purely public use. And if in the meantime, or during the time when it does not require its peak load for its public use, it permits such uses as the evidence shows it now does, such use is so insignificant and so purely incidental that it will not defeat the right to condemn for the public use."

It is the duty of the courts to see that private property is not taken for private uses, and that no excessive or unreasonable appropriation is made for public uses. Public service corporations seeking to exercise the right of eminent domain must proceed in good faith, as they will not be permitted to condemn private property for private uses under the pretense that it is being taken for public uses. Yet property sufficient to meet prospective public needs can and may be taken.

The relator insists that the evidence shows a lack of public necessity for the property sought to be taken, and that it is not being taken for a public use. We have examined the evidence with much care and conclude these contentions can-

not be sustained. It already appears that respondent has a contract and franchise by which it has agreed to furnish power for public use to the town of Camas, and that it has agreed to furnish power to an electric public service railroad about to be constructed. It is seeking to develop ten thousand horse power, and contemplates the procuring of other contracts for the transmission of such power to various localities, to be devoted to public uses only. Relator insists that the amount now sought to be appropriated is largely in excess of present or prospective public need or demand. It lays stress upon the fact that the only contracts respondent now has are the ones above mentioned, which it says will require but a small amount of power. We fail to see the force of this argument. No company can obligate itself to furnish power until it has acquired the necessary property which will enable it to perform its agreements. Relator's position seems to be that a public service corporation, in advance of actual condemnation, must contract power for public uses as a condition precedent to its right to condemn. No corporation could safely do so. It is needful that it first acquire the property in order that it may contract with ability to perform. The petition avers, and the testimony shows, that the uses sought to be served by respondent and for which the property is sought to be taken are public. This being true, the condemnation should be permitted in anticipation of public service contracts which will be entered into later. If, after respondent has acquired the power for a public use, it should abuse its privileges, or refuse to proceed in good faith, the remedy is in state control. *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.*, *supra*.

We are unable to conclude from the evidence that the property is sought to be taken by respondent for private uses, in violation of the constitution or any statute of this state.

The relator insists that it is a public service corporation, that it has devoted the property to a prior public use, and that respondent cannot condemn the same. This statement

is not sustained by the evidence.    We are unable to find that the property has already been devoted to a public use.

The judgment is affirmed.

FULLERTON, GOSE, CHADWICK, and PARKER, JJ., concur.