## PUGET SOUND INTERNATIONAL RY. & POWER CO. v. KUYKENDALL et al. (CITY OF EVERETT et al., Interveners).

(District Court, W. D. Washington, S. D.   November 13, 1923.)

### No. 101–E.

1. **Electricity ⊙➤11—Question of public use is judicial question.**
   The question whether a use for which electricity is supplied is public in its nature is a judicial question.

2. **Electricity ⊙➤11—Sale of surplus power for private use not subject to public regulation.**
   Electrical energy produced by a company which is not required for present needs of a public service may reasonably be called surplus, and its sale to private parties for power purposes is not subject to regulation by the Public Service Commission of Washington.

3. **Courts ⊙➤361—Effect given by federal courts to state decisions.**
   The fact that the jurisdiction of a federal court is invoked on the ground that the action of a state commission is in violation of the federal Constitution does not require the court to ignore state decisions respecting the powers of the commission and to determine the question as one of the federal law alone.

In Equity. Suit by the Puget Sound International Railway & Power Company against E. V. Kuykendall and others, constituting the Public Service Commission of the State of Washington, and L. L. Thompson, as its Attorney General, with the City of Everett and the Everett Trades Council as interveners. Decree for complainant.

James B. Howe, of Seattle, Wash., and J. A. Coleman, of Everett, Wash., for plaintiff.

L. L. Thompson, Atty. Gen., and Raymond W. Clifford, Asst. Atty. Gen., for defendants.

Erskine Wood, of Portland, Or., amicus curiæ.

R. J. Faussett and J. W. Dootson, both of Everett, Wash., for interveners.

CUSHMAN, District Judge. After the motion to dismiss herein was overruled by the court the defendants answered, as did the city of Everett. The case has been submitted upon stipulated facts. It is not

necessary to consider the evidence, unless the controlling allegations of the bill, held sufficient upon motion to dismiss, have been put in issue by the answer of the defendants. In the absence of such denials, the case may be considered as upon motion for decree upon the bill and answer. In determining this question, specific admissions in the answer must outweigh general denials.

The plaintiff, under franchises, furnishes light for buildings and residences in the city of Everett, and furnishes power in the operation of the street railway and municipal pumps. These services are admitted to be public. It also sells power for heating and manufacturing purposes to individuals and private corporations. This business the plaintiff contends is private, and defendants that it is public. No claim has been made that the latter two uses or purposes are different in any respect, under the principles of law applicable.

Upon the motion to dismiss it was held to be "perfectly clear that the order of the Public Service Commission requires the plaintiff to reduce its charges to the public for lighting to the amount that its power business nets it in excess of 8 per cent. per annum, and that the disclosures required by defendants regarding plaintiff's power business and contracts are simply a means to that end"; the power business mentioned being the power sold to individuals and private corporations. The action proposed by the commission, as shown by the bill, would require plaintiff to reduce its rates in its private business, and was held to be a taking of its property, in violation of the Fourteenth Amendment to the Constitution. In the answer appears, among others, the following allegations and admissions:

"Answering paragraph VIII, they deny that the light and power business of the plaintiff consisted and now consists of public and private business, and they say that the entire light and power business of the plaintiff is a service of the public in the capacity of a public utility, subject to the regulation of the Public Service Commission of the state of Washington, as by statute provided. * * * They deny that plaintiff sold and now sells any electrical energy for either light or power, otherwise than as a service to the public and in its capacity as a service utility."

The answer further alleges that the Public Service Commission had found:

"That a substantial and very material part of respondent's business is the distribution, sale, and furnishing of electricity as power and for power purposes, and that the electricity so distributed, sold and furnished is not dump or surplus energy. * * * They admit that the return of plaintiff from its sales of light and power in their entirety is embraced in the commission's order, and that by the terms of such order plaintiff is permitted to earn 8 per cent. per annum upon the value for rate making purposes found by the commission.

"Answering paragraph XXI, they deny that the order of the Public Service Commission of the state of Washington affects adversely, or at all, any alleged private income of plaintiff arising from the sale of light and power, or that plaintiff has any such alleged private income within the purview of the law. * * * They deny that plaintiff has contracts, income, or business alleged as private which are not subject to the jurisdiction of the commission. These defendants deny, not only the applicability of the case of the State of Washington, on the relation of the Public Service Commission, Respondent, v. Spokane & Inland Empire Railroad. * * * These defendants admit they will, unless enjoined, employ all lawful means to compel compliance with the order of the commission and to subject the entire light and

power business of the plaintiff, which they allege to be wholly and in every part a public service and not, as set forth in the bill, composed of public and private business, to the regulation of the commission.

"Answering paragraph XXIII, they admit that, unless lawfully restrained, the Public Service Commission of the state of Washington will proceed to promulgate and enforce a schedule of rates covering the business of the plaintiff in the sale of electrical energy for whatever use, and the whole thereof, no part of which these defendants say is private, or other than a service of the public. They deny that such promulgation and enforcement of a schedule of rates will disrupt the business of the plaintiff and cause it irreparable injury and damage, and they say that the effect on plaintiff's business will be none other than that incident to a change of rates as a result of lawful regulation."

Defendants further allege:

"That a substantial and very material part of plaintiff's business was and is the service of the public in the distribution, sale, and furnishing of electricity as power and for power purposes, and that the electricity so distributed, sold, and furnished is not dump or surplus energy."

[1] There is no substantial difference between the case now presented and that made upon the motion, or, if there is, the present is not more favorable to the defendants. Much stress is placed upon the commission's finding, quoted above, that electricity sold and furnished for power purposes "is not dump or surplus energy." That finding weakens rather than strengthens defendants' case. The question whether a use is public in its nature is a judicial question. Const. Wash. art. 1, § 16; Walker v. Shasta Power Co. (9th C. C. A.) 160 Fed. 856, at page 859, 87 C. C. A. 660, 19 L. R. A. (N. S.) 725.

[2] Energy which is not required for the present needs of a public service is one that may reasonably be called surplus. As said by the Supreme Court of the state of Washington, in speaking of the act of 1911 (Laws 1911, p. 543), in State ex rel. Public Service Commission v. Spokane & Inland Empire Railroad Co., 89 Wash. 599, at page 606, 154 Pac. 1110, at page 1113 (L. R. A. 1918C, 675):

"There is nothing to indicate a legislative intent to declare that the sale of surplus or secondary power pending a future use by a company in the performance of its public functions is a thing that affects the general welfare, the health, peace, or happiness of the citizen, or that it is in any way necessary to sustain the right of the state to govern."

If the public service is one that may reasonably be expected to grow, in the exercise of business foresight, the owner of the public service would acquire in advance the power to meet such increased demand, and when acquired it would be held subject to the needs of such public service, and being so held it would, to a degree, be colored by the public service for which it was held. In the present case the plaintiff had a contract with the Puget Sound Power & Light Company, in which it was provided:

"*First—Service.*—Power company agrees to reserve for and furnish to purchaser, during the term of this contract, sufficient electric energy at a nominal potential of 50,000 volts, three-phase, sixty-cycle alternating current, to supply purchaser's requirements of electric energy in the operation of its street railway and lighting and power systems in the city of Everett, Washington, and the town of Lowell, Marysville, and intermediate territory."

Under such a contract, without more, the electricity used in its power business is not incidental to its public lighting and railway service.

That there was less question in such case than in that of surplus or dump power is recognized by the Supreme Court of the state of Washington in the following cases: State of Washington ex rel. Public Service Commission v. Spokane & Inland Empire Railroad Co., 89 Wash. 599–601, 154 Pac. 1110, L. R. A. 1918C, 675; Sunset Shingle Co. v. Northwest Electric & Waterworks, 118 Wash. 416, 203 Pac. 978; State of Washington ex rel. Tacoma Industrial Co. v. White River Power Co. et al., 39 Wash. 648, 82 Pac. 150, 2 L. R. A. (N. S.) 842, 4 Ann. Cas. 987. Other decisions of the Supreme Court of the state of Washington, not so directly in point perhaps as the foregoing, yet bearing upon the question, are Healy Lumber Co. v. Morris, 33 Wash. 490, 74 Pac. 681, 63 L. R. A. 820, 99 Am. St. Rep. 964; State ex rel. Harris v. Superior Court, 42 Wash. 660, 85 Pac. 666, 5 L. R. A. (N. S.) 672, 7 Ann. Cas. 748; State ex rel. Harris v. Olympia L. & P. Co., 46 Wash. 511, 90 Pac. 656; State ex rel. Tolt Power & Transp. Co. v. Superior Court, 50 Wash. 13, 96 Pac. 519; State ex rel. Dominick v. Superior Court, 52 Wash. 196, 100 Pac. 317, 21 L. R. A. (N. S.) 448; Tacoma v. Nisqually Power Co., 57 Wash. 420, 107 Pac. 199; State ex rel. Lyle Light, Power & Water Co. v. Superior Court, 70 Wash. 486, 127 Pac. 104; State ex rel. Weyerhaeuser Timber Co. v. Superior Court, 71 Wash. 84, 127 Pac. 591.

In Walker v. Shasta Power Co., 160 Fed. 856, at page 861, 87 C. C. A. 660, at page 665 (19 L. R. A. [N. S.] 725), the Circuit Court of Appeals for this circuit said:

"Of similar import are Attorney General v. Eau Claire, 37 Wis. 400, and State ex rel. Harris v. Superior Court, 42 Wash. 660, 85 Pac. 666, 5 L. R. A. (N. S.) 672. In the latter case the testimony was to the effect that the condemnation was sought for the purpose of obtaining additional power, 'not only for use in operating the light plant and electric car system, but for the purpose of selling power to the different manufactories and for different purposes.' The court held that for all these purposes the petitioner was not entitled to exercise the right of eminent domain, since the use was not a public one. We find no case which holds that the bare fact that a corporation has in enumerating its functions expressed a purpose of engaging in a private enterprise as well as serving a public use shall deprive it of the right to exercise eminent domain for the public use."

[3] Defendants' answer to these decisions of the state court is that, this cause being brought in this court upon the ground that the threatened action of the commission is in violation of the Fourteenth Amendment, it is therefore the duty of this court to determine as a federal question whether the sale of power at will by the plaintiff to individuals and corporations is a public use. In view of the repeated decisions of the Supreme Court of the state, during 20 years, that the generation of electricity sold commercially to manufacturers, railroads, cities, individuals, and private corporations was not a public use, under the state Constitution and laws, and the acquiescence of the Legislature of the state in the holding in those cases, and the situation created thereby, this court will not consider the point as one of purely federal cognizance.

The state Constitution provides:

"Art. 21, § 1. The use of the waters of this state for irrigation, mining, and manufacturing purposes shall be deemed a public use.

"The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise."

Concerning the first of the foregoing provisions, the Supreme Court of the state said, in State ex rel. Tacoma Industrial Co. v. White River Power Co., 39 Wash. 648, at page 669, 82 Pac. 150, at page 153 (2 L. R. A. [N. S.] 842, 4 Ann. Cas. 987):

"If it was intended by the article in question to extend the right of eminent domain to private manufacturing corporations, or to authorize the taking of private property for a private use, it violates the due process clause of the federal Constitution. A state is powerless, by statute or by constitutional provision, to declare a use public which is essentially and inherently private. In Kaukauna Water Power Co. v. Green Bay, etc., Canal Co., 142 U. S. 254, 12 Sup. Ct. 173, 35 L. Ed. 1004, the court said: 'The improvement of the navigation of a river is a public purpose, and the sequestration or appropriation of land or other property, therefore, for such purpose, is doubtless a proper exercise of the authority of the state under its power of eminent domain. Upon the other hand, it is probably true that it is beyond the competency of the state to appropriate to itself the property of individuals for the sole purpose of creating a water power to be leased for manufacturing purposes. This would be a case of taking the property of one man for the benefit of another, which is not a constitutional exercise of the right of eminent domain."

In Kaukauna Water Power Co. v. Green Bay & Mississippi Canal Co., 142 U. S. 254, at pages 271, 272, 12 Sup. Ct. 173, at page 177 (35 L. Ed. 1004), cited and relied upon by the state court, it is said:

"The Act of the Legislature of Wisconsin of August 8, 1848, in so far as it provided that the water power created by the dam erected, or other improvements made on the river, should belong to the state, is claimed to be invalid upon the ground, first, that it purported to take private property for a private purpose. * * * Practically the only question is whether this act was valid in so far as it authorized the state to take and appropriate the water power in question. * * * It is his private property, under the protection of the Constitution, and it cannot be taken, or its value lessened or impaired, even for public use, 'without compensation,' or 'without due process of law,' and it cannot be taken at all for any one's private use. * * * Nor is it necessary to answer the question in this case, since it appears that, whatever this property is, it has been appropriated and no provision made for the compensation of the owner."

The holding of the court was:

"Our conclusion is that there was no taking of the property of the plaintiff in error without due process of law, and the decree of the Supreme Court of Wisconsin is affirmed."

In view of the question before the Supreme Court of the United States in this case, and the conclusion reached by it, it has been contended here that the portion of the opinion quoted and relied upon by the state Supreme Court is dictum; further, that it is contrary to holdings of the Supreme Court of the United States later in time than the decision of the state court, and that for that reason this court is not bound to follow the ruling of the state Supreme Court upon the question of the construction and validity of the state Constitution. The later decisions of the Supreme Court of the United States referred to are Hairston v. Danville & Western Railway Co., 208 U. S. 598, 28 Sup. Ct. 331, 52 L. Ed. 637, 13 Ann. Cas. 1008; Mt. Vernon-Woodberry

Cotton Duck Co. v. Alabama Interstate Power Co., 240 U. S. 30, 36 Sup. Ct. 234, 60 L. Ed. 507; Otis Co. v. Ludlow Manufacturing Co., 201 U. S. 140, 26 Sup. Ct. 353, 50 L. Ed. 696; Strickley v. Highland Boy Gold Mining Co., 200 U. S. 527, 26 Sup. Ct. 301, 50 L. Ed. 581, 4 Ann. Cas. 1174; Clark v. Nash, 198 U. S. 361, 25 Sup. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171; Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369.

It is true that, in the foregoing cases, uses analogous to the one here in question were held to be public uses; but such holdings were made, in large measure, in deference to, and not at variance with, the rulings of state courts. That this is true is sufficiently shown by the following quotation from the laast-mentioned of these cases, Fallbrook Irrigation District v. Bradley, 164 U. S. 112, at page 155, 17 Sup. Ct. 56, at page 62 (41 L. Ed. 369), in which the court said:

"We should not be justified in holding the act to be in violation of the state Constitution in the face of clear and repeated decisions of the highest court of the state to the contrary, under the pretext that we were deciding principles of general constitutional law. If the act violate any provision, expressed or properly implied, of the federal Constitution, it is our duty to so declare it; but, if it do not, there is no justification for the federal courts to run counter to the decisions of the highest state court upon questions involving the construction of state statutes or Constitutions, on any alleged ground that such decisions are in conflict with sound principles of general constitutional law."

In considering an order of the Public Utilities Commission of the District of Columbia, the Supreme Court of the United States, in determining the question as to the character of the use, held the test to be, in that case, whether or not a taxicab company was bound to serve a fare or guest upon demand; that a company furnishing from its garage automobiles for service on order, generally by telephone, was free to refuse the employment, and was, as to such service a private carrier, not bound to furnish the commission information as to such private business. Terminal Taxicab Co., Incorporated, v. Kutz, Newman, and Brownlow, Commissioners and constituting the Public Utilities Commission of the District of Columbia, 241 U. S. 252, 36 Sup. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765. In Block v. Hirsh, 256 U. S. 135, 41 Sup. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165, the court upheld the power of the commission in the District of Columbia to fix fair and reasonable house rentals. This latter is conceded to be an extreme case, created by the exigencies due to the war. While the question of due process of law may have been involved in these two cases, they of course did not arise under the Fourteenth amendment.

In Chesapeake & Potomac Telephone Co. v. Manning, 186 U. S. 238, 22 Sup. Ct. 881, 46 L. Ed. 1144, the court considered the reasonableness of telephone rates in the District of Columbia; but in the present case, having held that the bill and answer show that the Public Service Commission of the state of Washington are undertaking to fix the rates to be charged by the plaintiff for a private service, the reasonableness of the rates is beside the question.

Decree for plaintiff; injunction to issue as prayed.