LUTHER KOUNTZE, PROSECUTOR, v. THE PROPRIETORS OF THE MORRIS AQUEDUCT ET AL.

1. The proprietors of the Morris aqueduct have power to condemn lands and rights in lands not only to enable them to furnish a supply of water to Morristown and its vicinity, ample for all reasonable contingencies, but also to collect and preserve the water in a state of purity.

2. An application for condemnation of lands made by that corporation, which is authorized to condemn lands necessary for its purposes, need not show how the corporation made or expressed its determination of the necessity to take the lands sought to be condemned.

3. Where the directors discussed and agreed on a plan for making use of certain waters, which plan required the acquisition of certain lands and rights, and have purchased and paid for some of such lands, they have sufficiently determined that it is necessary to acquire the other lands essential to the plan, although they have passed no resolution to that effect.

4. Where, afterwards, the president made unsuccessful efforts to purchase some of said lands, and had reported his failure to the directors, it seems that he acquired implied authority from the directors to institute proceedings to condemn, but if not, the subsequent approval and adoption by the directors of such proceedings instituted by him will sustain an order made thereon.

On *certiorari.*

This *certiorari* brings up an order of a justice of this court, made upon the application of "The Proprietors of the Morris Aqueduct," and appointing commissioners to assess the damages which Kountze, the prosecutor, will sustain by the taking by said proprietors of certain lands and of certain rights, easements and privileges in certain other lands.

Argued at June Term, 1895, before Justices VAN SYCKEL, LIPPINCOTT and MAGIE.

For the prosecutor, *Alfred Mills.*

For the defendants, *Henry C. Pitney, Jr.*

The opinion of the court was delivered by

MAGIE, J.    The right of the corporation known as "The Proprietors of the Morris Aqueduct" to exercise the eminent domain for ·the purposes for which it was created, has been established by the concurring judgment of this court and the Court of Errors.    *Olmsted* v. *Proprietors,* 17 *Vroom* 495 ; *S. C.,* 18 *Id.* 311.

But prosecutor contends that the corporation has no right to condemn the easements, privileges and lands which it seeks to acquire by the proceeding before us, and that the order appointing commissioners ought to be vacated.

This contention is mainly put upon the ground that the easements, privileges and lands sought to be condemned are not necessary for the purposes for which the condemning corporation was created.

The corporation was created by an act passed November 16th, 1799, for the purpose of supplying Morristown with water. By supplements to its charter and by general laws, which are collected in the opinions above cited, it acquired the right to supply water beyond the limits of Morristown and also the right to acquire by condemnation lands, springs and streams of water necessary for those purposes.

The application in this case asserts that the corporation deems it necessary to take by condemnation the easements and privileges in lands of prosecutor therein described and also other lands of his therein described, and it is verified by the oath of its president. This was sufficient to confer jurisdiction upon the justice applied to to make the order complained of. But it is settled in our courts that a landowner whose land is thus sought to be condemned may dispute the fact of necessity and, by a writ of *certiorari,* require this court to determine on affidavits whether the asserted necessity in fact exists. The burden is on the corporation to show its right to condemn by establishing the condition precedent upon which the right was granted. *Olmsted* v. *Proprietors, ubi supra.*

In this case the condemning corporation must make it appear that the rights it seeks to acquire are necessary for the purposes of its incorporation, viz., to supply Morristown and its vicinity with water.

In the Olmsted case the Court of Errors held that the word "necessary," in its application to the powers conferred on this corporation, was to be construed as justifying the taking of a supply of water so ample as to remove any reasonable apprehension that it will not be sufficient for those purposes.

It appears in this case that the rights and lands of prosecutor sought to be condemned are intended to be used in the transmission and storage of water flowing from springs and

streams in Cat swamp, already acquired by the corporation. The contention of prosecutor is that the corporation had previously acquired from other sources, and then possessed, a supply of water so ample that it could not be doubted that it was sufficient, and therefore that the necessity contemplated by the grant of power to condemn, as construed by the Court of Errors, did not exist.

Much testimony has been taken as to the present and prospective needs for water of Morristown and its vicinity and the supply otherwise acquired by the corporation. Some expert testimony was taken on both sides as to the wisdom of the plans adopted by the corporation to utilize some of the water it has acquired. But it is not deemed necessary to analyze the evidence. It is sufficient to say that we think that the corporation, in acquiring the waters in question, kept strictly within the lines laid down by the Court of Errors. The needs to be considered are those of a growing population and an increasing use, and the supply must be reasonably ample for seasons of drought and to guard against accidents which may deprive the corporation of water from some of its sources. It is made to appear that water acquired by the corporation has at times become unfit for use by reason of the growth of algæ, and it is clearly a matter of question whether the means tried to assure its fitness at all times may prove successful. Under such circumstances we think the acquisition of the waters in question was within the power of the corporation, because it assured, or tended to assure, a supply ample for a not unlikely contingency.

The easements and privileges sought to be acquired in lands of prosecutor are designed to enable the corporation to carry waters already acquired by it and which now cross prosecutor's land in an open brook, by an underground pipe protected by side drains from surface water. The purpose is to prevent riparian abstraction and evaporation and to exclude impurity. The grant of power to collect water and to supply it to an inhabited place, and for that purpose to exercise the eminent domain, must include the right to collect and

preserve such water in a state fit for use and to acquire by condemnation such rights in land as are adapted to assure its purity.

The lands sought to be acquired by this condemnation are intended to be used, with other lands now owned by the corporation, for a reservoir for the storage of water. It is contended that as the evidence shows that the corporation had no present intention to build that reservoir, the necessity for taking lands for its building does not exist. But it also appears that the reservoir in question is part of a general plan for making use of the waters of Cat swamp for the purposes of the corporation. If that plan has been properly determined upon by the corporation, in my judgment it may proceed to condemn lands necessary to its execution, although the whole plan may not be, and may not be intended to be, executed at once.

Prosecutor further contends that the order before us should be vacated because the application on which it was made does not show that any corporate action by resolution or otherwise was taken by the condemning corporation passing upon the necessity to take prosecutor's lands or declaring its belief in such necessity.

The application is made by the proprietors of the Morris aqueduct as petitioners, and states that they deem it necessary and proper to add to and enlarge their present works and to increase their facilities for furnishing water to the town of Morristown and its vicinity and preserving the same free from contamination, and for that purpose require the portion of lands of prosecutor, and the rights, easements and privileges in other lands of prosecutor therein described. This asserts a determination of the necessity to take, and, coupled with the prayer for the appointment of commissioners, it equally shows a determination to take. True, it does not show how the determination was reached or expressed. But I can perceive no reason why it should. So far as my observation extends, applications of this character are in the form of the application before us. *Corbin's Forms* 1496.

But prosecutor further contends that in fact there was no corporate action on the part of the proprietors of the Morris aqueduct, either upon the necessity of taking prosecutor's lands or giving authority to make application to appoint commissioners.

It appears that the condemning corporation has a president and a board of directors. It also appears that, prior to the presentation of the application for the appointment of commissioners, the directors had never passed any resolution on the subject of acquiring or condemning prosecutor's lands, or authorizing their president to make application for condemnation in the name of the corporation. On May 8th, 1895, after the return of this *certiorari*, the directors passed and entered on their minutes a resolution approving the institution of the proceedings to condemn prosecutor's lands taken by their president and directing him to continue the prosecution thereof.

I think it must be conceded that before a corporation, authorized to condemn lands necessary for its purpose, can proceed to acquire such lands by condemnation, it should determine that the necessity exists. How such determination should be expressed cannot be a matter of importance to the landowner, who may always raise the question of the actual existence of the required necessity.

Now, it further appears that a general plan for making use of the waters arising in Cat swamp for the purposes of this corporation had been considered and discussed in meetings of the directors and agreed upon by them, although not by a formal resolution; that the plan embraced the acquisition of lands and rights, including those now sought to be condemned from prosecutor; that other of such lands had been purchased by the president, and title thereto had been acquired by the corporation; that payment for the lands so purchased had been made by the treasurer, and such payment had been approved by the directors; that the president had endeavored to come to an agreement with prosecutor for the purchase of the rights and lands now sought to be condemned, but with-

out success, and that the efforts to purchase and their failure had been reported to the directors. Upon these facts I reach the conclusion, though with some hesitation, that the directors representing this corporation, by paying for and acquiring title to some of the lands essential to this general plan, determined upon the necessity of acquiring, by purchase or condemnation, all the lands essential to the plan, and gave implied authority to take proceedings to condemn upon failure of the efforts to purchase.

But, if I were of another mind in respect to the authority to institute these proceedings implied from the acts of the directors, I should still think that this order should not be vacated, for the act of the president in that regard has been since approved and adopted by the directors. The lack of authority, if such lack there was, has done no injury to prosecutor, who has had an opportunity to raise, and has raised, the real question in the case, viz., whether there was a necessity to take his lands for the purposes of this corporation.

For these reasons, I think the order brought before us by this writ should be affirmed.