[No. 10738.  Department Two.  November 15, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Weyerhaeuser Timber Company, Plaintiff*, v. THE SUPERIOR COURT FOR SNOHOMISH COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—PROCEEDINGS—PREREQUISITE—ADOPTION OF PLAN OR LOCATION. Under Rem. & Bal. Code, § 925, making the question of public necessity in condemnation proceedings a question for the court to finally decide, a formal resolution by the corporation adopting the particular plan or location prayed for in the petition, is not essential, either to pleading or proof, as a prerequisite to an adjudication of public use, where the contest is between the relator and the landowner, and there is no question of priority between rival companies making time material; the filing of the petition being sufficient as against the landowner.

SAME. The prosecution of condemnation proceedings for certain lands, instituted by an authorized attorney of the petitioner, is a ratification of the proceeding, and estops the petitioner from claiming that the action was unauthorized.

EMINENT DOMAIN—PUBLIC USE—POWER PLANT—ELECTRIC LIGHT—PRIVATE AND PUBLIC PURPOSES. A condemnation for an electric power plant is for a public use, where the only present market for the power and the only present purpose was to furnish electric light for a town and its inhabitants; and it is immaterial that the petitioner was also authorized by its articles to sell power for all purposes, public and private; since these uses are separable.

SAME—PUBLIC USE—NECESSITY. Condemnation for an 80 horse power plant, to furnish electric light to a town that has present need for only 30 horse power, is not excessive, in view of the probable growth of the town, where there is no intention to use the

[1]Reported in 127 Pac. 591.

power for other than public use, except in such small quantities as to be insignificant and incidental to the main public purpose.

SAME—PUBLIC NECESSITY—PRESUMPTIONS—EVIDENCE. In condemnation for an electric light plant by a company having a franchise and under agreement to furnish a town with electric light, it will be presumed that the enterprise is in the interest of the public, and evidence that the plan is wasteful and that another plan would develop greater power from the same source does not establish that there is no public necessity for the plan proposed; since, under Rem. & Bal. Code, § 925, the court is to determine the question of necessity, and can decide between the two plans when the occasion arises.

EMINENT DOMAIN—PROCEEDINGS—APPEAL—REMAND. Where, in eminent domain proceedings to raise the waters of a lake for a reservoir, there was no evidence as to the height of the dam necessary, nor as to how much land would be flooded, the case will be remanded for a hearing and findings thereon.

Certiorari to review a judgment of the superior court for Snohomish county, Bell, J., entered September 25, 1912, adjudging a public use, in proceedings to condemn lands for water power purposes. Reversed in part.

*Hayden & Langhorne,* for relator.
*Shank & Smith,* for respondents.

ELLIS, J.—This is a proceeding by certiorari to review an adjudication of public use and necessity in an action for condemnation. In its petition for condemnation, the Sultan Electric Company alleged, that it was empowered by its articles of incorporation to engage in the manufacture, sale, and distribution of electricity for light, heat, and power, and all other purposes both public and private; that it was duly authorized to appropriate such lands, real estate, and water rights as necessary or appropriate for the carrying out of its corporate purposes; that it had acquired a franchise from the town of Sultan for the construction of a plant for the manufacture, sale, and distribution of electricity for light, heat, and power purposes, and has obligated itself to carry. out the terms of the franchise; that, in order to do so, it is necessary that the petitioner appropriate certain described

real estate.   It then set out the names of the owners, en-
cumbrancers, or other persons interested therein, among them
that of the relator herein, and alleged that the petitioner and
such owners or persons interested were unable to agree upon
the proper compensation to be paid for the property.   The
prayer was in the usual terms.

The plan as outlined in evidence is to construct a dam
about twelve feet high across a small stream called McCoy
creek, which is the outlet of Lake Roeniger, in Snohomish
county.   From the dam, by means of an eighteen-inch pipe,
water will be led down hill approximately 1,400 feet to the
site of the proposed power station, giving a fall of about
214 feet, where it will be used to propel a water wheel con-
nected with a generator of an approximate capacity of eighty
horse power.   From the power station, a transmission line
will lead a little over a mile to the town of Sultan.   McCoy
creek, at certain periods of the year, becomes almost dry.
As a part of the plan, it is the intention, therefore, to place
a dam across the outlet of Lake Roeniger, in order to furnish
a reserve of water to be let out gradually during the dry
season and utilized in running the machinery.   The current
will be supplied to the business houses and residences in the
town by means of overhead distribution wires.   This over-
head system was practically completed at the time of  the
hearing.

The relator contends that the proceeding should have been
dismissed, because there was no proof that the respondent had
bound itself to build the plant, or had adopted any survey,
or taken any corporate action looking to the prosecution of
the enterprise.   Maps of surveys, showing the lands to be
taken for the pipe line and the lands which would be flooded
by the erection of the dams and the taking of which is asked
for in the petition, were received in evidence upon the testi-
mony of the surveyor who made them, but there was no evi-
dence of any formal resolution of the trustees of the re-

spondent adopting the plan and location, or declaring that the lands sought are necessary to the enterprise.

It must be conceded that, in those jurisdictions where by statute the corporation itself determines finally the necessity of certain property for its use, and the location and adoption is in and of itself an act of appropriation which vests a conditional title in the locator subject only to the right of the owner to have the compensation assessed and paid, the formal act of location and adoption should be, and is, held a *sine qua non* to any right in the corporation to institute proceedings to assess the compensation. Thus, in Pennsylvania, under a statute providing that, "The president and directors of such company shall have the power and authority by themselves, their engineers, superintendents, agents, artisans, and workmen, to survey, ascertain, locate, fix, mark, and determine such route for a railroad as they may deem expedient," etc., it is held that this act of location and adoption must be formally authorized by the president and directors before it can be done with any effect, especially as between rival companies seeking the same location. *New Brighton & N. C. R. Co. v. Pittsburgh, Y. & C. R. Co.*, 105 Pa. St. 13; *Weidenfeld v. Sugar Run R. Co.*, 48 Fed. 615; *Williamsport & N. B. R. Co. v. Philadelphia & E. R. Co.*, 141 Pa. St. 407, 21 Atl. 645, 12 L. R. A. 220.

Under such a statute it is held that:

"The act of location is at the same time the act of appropriation. The space covered by the line as located is thereby seized and appropriated to the purposes of the construction and operation of the railroad by virtue of the power of eminent domain, and nothing remains to be done except to compensate the owner." *Williamsport & N. B. R. Co. v. Philadelphia & E. R. Co., supra.*

See, also, *Hagner v. Pennsylvania S. V. R. Co.*, 154 Pa. St. 475, 25 Atl. 1082. Even in those jurisdictions where, as here, the question of necessity is one finally to be determined by the court and not by the corporation itself, in cases of

contest as to priority between rival corporations for the same location, the vital point being the *time* of location and not the mere *fact* of location, it is held that *priority in right* must be shown by a *priority in time* of formal adoption and actual survey.  *Morris & Essex R. Co. v. Blair*, 9 N. J. Eq. 635.

The foregoing cases are cited and chiefly relied upon by the relator as showing that this proceeding should fail for lack of proof of a formal resolution adopting the location. They are not applicable to the situation here presented. They all, save one *(Morris & Essex R. Co. v. Blair, supra)*, arose under the Pennsylvania statute, which is construed as making the act of location the final determination of the necessity and appropriation, and they all, save one *(Hagner v. Pennsylvania S. V. R. Co., supra)*, arose upon a contest between rival companies for the same location, in which the *time* of location rather than the *fact* was the material thing as determining priority.

In this state the question of necessity is by statute a question for the court and not for the corporation itself to finally decide.  Rem. & Bal. Code, § 925.  In this proceeding the contest is between the petitioner and the landowner, and no question of priority arises.  Nowhere in the statute governing the entire procedure (Rem. & Bal. Code, §§ 921-925), does it appear that a formal resolution, adopting the particular plan or location and declaring a necessity for the land, is essential either to pleading or proof as an indispensable prerequisite to the right to have a jury called to assess the compensation to be paid.  The utmost force which can be accorded to a selection and location on particular land by the condemner is that of a *prima facie* showing of the necessity of that land to the enterprise.  The actual determination of necessity is still a question for the court to determine upon evidence, however formal a selection by the corporation may be shown.  *State ex rel. Postal Tel. Cable Co. v. Superior Court*, 64 Wash. 189, 116 Pac. 855.

The filing of the petition describing the land sought, alleging the necessity and stating the purpose, is sufficient, as between the corporation and the landowner, to invoke the jurisdiction of the court to determine .these things which in some other jurisdictions are determined by the corporation itself. It was admitted at the hearing that the petition was prosecuted by the duly authorized attorney for the condemning company. The thing sought in the petition was not *ultra vires* of the petitioner. The prosecution of the proceeding by its attorneys would, therefore, forever estop the petitioner to claim that the act was unauthorized. The admitted authorization of the attorney to prosecute the suit has the same force as a ratification of the act afterwards, and ratification has been held sufficient where no actual authority was ever given in advance.

"But if I were of another mind in respect .to the authority to institute these proceedings, implied from the acts of the directors, I should still think that this order should not be vacated, for the act of the president in that regard has been since approved and adopted by .the directors. The lack of authority, if such lack there was, has done no injury to prosecutor, who has had an opportunity to raise, and has raised, the real question in the case, viz., whether there was a necessity to take the lands for the purposes of this corporation." *Kountze v. Proprietors of Morris Aqueduct,* 58 N. J. L. 303, 33 Atl. 252.

Where, as in this state, the question of necessity is one for the court, both authority and reason sustain us in the view that the adoption of the plan and the necessity for the land, especially as between condemner and landowner, may be proved as any other fact, and no antecedent resolution or formal corporate action is essential to such proof. *Kountze v. Proprietors of Morris Aqueduct, supra; Lake Shore & M. S. R. Co. v. Baltimore & O. & C. R. Co.,* 149 Ill. 272, 37 N. E. 91.

Relator next contends that the proposed taking is not for a public use. The evidence, however, shows that the only

present market for electric current and the only present purpose of the respondent is to furnish electric light to the town and inhabitants of Sultan. While the articles of incorporation empower the respondent to manufacture and furnish electricity for all purposes, public and private, these uses are separable. In such a case, condemnation may be had for the public use only. It is not the objects for which the corporation is formed that prevent a diversion of the property condemned to a private use. "The preventive rests in the power of the state to compel it to exercise its granted privileges." *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.*, 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198.

While the respondent seeks to utilize the fall of the creek to the extent of 80 horse power, and there is a present need for only about 30 horse power for public use, we think, in view of the probable growth of the town and the continually increasing domestic uses to which electric current may be put, the margin is not excessive. *Tacoma v. Nisqually Power Co.*, 57 Wash. 420, 107 Pac. 199. The evidence fails to show that there is any intention to use this power, either now or in the future, for other than the public use, except possibly in such small quantities as to be insignificant and incidental to the main public purpose. This does not deprive the enterprise of its public character so as to defeat the condemnation. *Tacoma v. Nisqually Power Co.*, *supra; Slingerland v. Newark*, 54 N. J. L. 62, 23 Atl. 129; *Spaulding v. Lowell*, 23 Pick. 71; *State v. Eau Claire*, 40 Wis. 533.

It is next urged that there was no sufficient showing that the public interest requires the prosecution of the enterprise. It is claimed that this is one of the things which the statute (Rem. & Bal. Code, § 925), expressly refers to the court for decision upon evidence. This must be conceded. The statute plainly so states. It must also be conceded that public interest is not identical with public use. There are many enterprises which are in a sense of public interest, which are not

devoted to public use. Public interest is nevertheless a necessary concomitant of public use. Where, therefore, as in this case, the only present demand is for a public use, and the respondent has, by its franchise and by a contract with the town, bound itself to furnish the town with light, we must, in the absence of any evidence to the contrary, assume that it is of interest to the public that the enterprise be prosecuted in some form.

The evidence tended to show that, by extending the pipe line to Lake Roeniger, using all of the water (about ten second feet), and taking advantage of all of the fall from there to the power site, there could be produced about 550 horse power; that by so extending the pipe line, there could be produced at the power site over 100 horse power, using only two second feet of the water; whereas, by the plan proposed, there can be produced only 80 horse power, using six second feet of water. It is, therefore, argued that the public interest does not require that over 500 horse power of potential energy should be thus destroyed in order to develop only 80 horse power of actual energy. While no authority is cited in support of the relator's contention, there would be much force in this argument were it not for the very statutory provision upon which the relator relies. Whether the use is a public use, and whether the public interest requires the prosecution of the enterprise, and what lands etc. are necessary for the enterprise, are all matters referred to the court for determination. Rem. & Bal. Code, § 925. From this results the doctrine which, for lack of a better name, may be called comparative necessity. If by the plan proposed the present and future public use and interest, as now apparent from the evidence, are met, that is as far as the court need now inquire. If in the future a condemnation is sought for a public use which demands the development of the full power of which the stream and lake are capable, the court has the authority under the statute to determine whether the public interest then requires the prosecution of such new enterprise; and, if it

does, to permit the condemnation of the present proposed plant for the purpose, or to compel a modification of it to meet the new situation. That is to say, when the issue between the two plans is presented, the court, under the statute, will have the power to decide which of the two is demanded by the public interest. The principle is recognized, though based upon a different statute, in *Tacoma v. Nisqually Power Co., supra.*

This meets every objection, except that there was not sufficient proof that the plan necessitated the raising of Lake Roeniger four feet in order to provide a reserve of water for use during the dry season. That a reserve of water is necessary was sufficiently established. There was, however, no evidence as to the height of the dam necessary at the outlet of the lake in order to produce that reserve, nor as to how much land would be flooded by such a dam as would be necessary.

The cause is therefore remanded, with leave to each side to make whatever showing can be made as to the necessity or lack thereof for the raising of the lake and the land to be flooded thereby, in order that the trial court may make a finding on evidence as to these things. It is so ordered.

MOUNT, C. J., MORRIS, FULLERTON, and MAIN, JJ., concur.