[No. 13543. *En Banc.* May 11, 1918.]

THE STATE OF WASHINGTON, *on the Relation of South Fork Log Driving Company et al., Plaintiff*, v. THE SUPERIOR COURT FOR PACIFIC COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—NECESSITY—PRACTICABILITY. Upon certiorari to review a finding of public necessity, that the plan invites engineering difficulties will not defeat the proceedings when it cannot be said to be impracticable, as relators lose nothing if the scheme fails.

SAME—NECESSITY—FINDING—SUFFICIENCY. A finding of public necessity is sufficient without finding in terms that the public interest required it, where from the facts found it appeared that plaintiff had a franchise to furnish a city with water, that the city depended upon the company, whose supply was insufficient to meet growing demands, and that the company was condemning in aid of its franchise, in view of Rem. Code, § 925, requiring that the enterprise be public, required in the public interest, and the property sought necessary therefor.

SAME—PROPERTY DEVOTED TO PUBLIC USE—NAVIGABLE STREAM—PUBLIC NECESSITY. A timber company having large tracts adjacent

[1] Reported in 173 Pac. 192.

to a stream navigable for logging purposes, and making prior use of the stream as a highway, cannot resist condemnation thereof by a water company for the purpose of supplying a city with water, but is entitled to recover its damages *pro tanto*, to the extent of its injury; since property devoted to a public use may be condemned for a different public use where there is a public necessity therefor.

SAME—PROPERTY DEVOTED TO PUBLIC USE—ANTICIPATION OF FUTURE NEEDS—PUBLIC NECESSITY. A water company supplying a city with water cannot resist condemnation by another water company for the same purpose, of lands acquired and held by it as a riparian owner on the stream in anticipation of its future needs, where it is not shown that it has put or intends to put the lands to a public use within a reasonable time, or that the same will be necessary for the carrying out of its franchise obligations to the city, or that it has the right or means to divert the water; its right as riparian owner giving it no right to divert the stream (overruling on re-hearing, *Id.*, 94 Wash. 691).

SAME—PROPERTY DEVOTED TO PUBLIC USE—DEFENSES. A company supplying water to a city cannot resist condemnation of its riparian rights on a stream by another water company on the ground that it had never been requested and had never refused to furnish a supply of water to the city for all purposes, where it was not using and did not have the right to use the waters if it had been requested to supply additional water.

SAME—PROPERTY DEVOTED TO PUBLIC USE—NECESSITY. A water company having a franchise to supply a city with water may condemn the prior rights of a log-driving company in a stream, whether its rights be destroyed or merely impaired, where by an admeasurement of the public interests it appears that the same will contribute directly to the daily necessities of the public, while the prior use contributes only indirectly and as reflected through the maintenance of a purely commercial enterprise.

MOUNT and FULLERTON, JJ., dissent.

Certiorari to review a judgment of the superior court for Pacific county, Clifford, J., entered May 12, 1916, adjudging a public use and necessity in condemnation proceedings, tried to the court. Affirmed.

*Welsh & Welsh, Hayden, Langhorne & Metzger,* and *Shepard, Burkheimer & Burkheimer,* for relators.

*Fred M. Bond* and *P. M. Troy,* for respondents.

CHADWICK, J.—The Willapa Power Company is the assignee of a franchise granted by the city of South Bend for the supplying of power and water for the use of the inhabitants of the city. The power company began an action to condemn certain rights belonging to the relators in the south fork of the Willapa river. A finding of necessity was made by the court below. The franchise of the power company was granted on the 16th day of March, 1914, and is to continue for a period of fifty years.

Before coming to the particular defenses urged by the relators, we shall notice the objection common to all of them—that the scheme of the power company is impractical and can never be created or maintained as outlined in its plans. That the plan will invite engineering difficulties is fairly certain, but we cannot say that it is impractical. Engineers may not agree, but such things cannot be worked out by the courts. Our function is limited to a finding of reasonable practicability, necessity, and public use. If the scheme should fail because of engineering difficulties, relators will not suffer. They must be paid all damages suffered by them before the work proceeds; and if, for any reason, the scheme fails, or the respondent does not put the property to the uses intended, they have ample remedy.

It is next contended that, although the court made a finding of necessity, it did not find that the public interest required the prosecution of the enterprise. The statute, Rem. Code, § 925, provides:

"That the contemplated use for which the land, real estate, premises or other property sought to be appropriated is really a public use, or is for a private use for a private way of necessity, and that the public interest requires the prosecution of such enterprise, . . . and that the land, real estate, premises or other property sought to be appropriated are required and necessary for the purposes of such enterprise."

It will thus be seen that the law requires a finding on the part of the court that the enterprise is (a) a public use, (b) that the public interest requires the prosecution of the enterprise, and (c) that the land or the property is required and necessary for the purposes of such enterprise. *State ex rel. Weyerhaeuser Timber Co. v. Superior Court,* 71 Wash. 84, 127 Pac. 591; *State ex rel. Union Trust & Sav. Bank v. Superior Court,* 84 Wash. 20, 145 Pac. 999, 149 Pac. 324.

While the court does not say in words that the "contemplated use . . . is really a public use," the findings are nevertheless ample to sustain its decree. The court finds the city of South Bend granted the franchise under which the power company is prosecuting its enterprise to the end that the inhabitants of the city might be provided with electrical power for municipal, domestic, and other purposes; that they may have an ample supply of water for domestic uses, sanitary purposes, fire protection, manufacturing, etc.; that the city of South Bend and its inhabitants will depend upon the power company to supply power and water; that its present plant is insufficient to meet the demands of a growing population and that it is necessary to enlarge its plant. This, when coupled with a finding that the power company is proceeding in aid of its franchise, is enough to satisfy the statute. We do not understand that the court is obliged to find in bare words that the contemplated use is a public use, but rather that facts be found from which the legal conclusion that it is a public use can be drawn. In *State ex rel. Weyerhaeuser Timber Co. v. Superior Court,* 71 Wash. 84, 127 Pac. 591, after conceding that public interest is not identical with public use, we said:

"Public interest is nevertheless a necessary concomitant of public use. Where, therefore, as in this case, the only present demand is for public use, and the

respondent has, by its franchise and by a contract with the town, bound itself to furnish the town with light, we must, in the absence of any evidence to the contrary, assume that it is of interest to the public that the enterprise be prosecuted in some form.''

We think the ordinance declaring the uses intended and the finding of the court are sufficient to bring this case within the rule just quoted.

We will next take up the several contentions of the relators. The Weyerhaeuser Timber Company is the owner of large tracts of valuable timber lands on and adjacent to the south fork of the Willapa river. It is conceded that the stream is navigable for logging purposes, and that the timber owned by the company is tributary to the stream and can be logged and driven to market in the stream by the company, or by the South Fork Logging Company, which is a boom and driving company. The timber company resists the condemnation of its rights upon the river because of its prior occupancy of the field as owner of tributary timber and its use of the stream as a highway, either directly or through the intervention of a public agent. From the very nature of things, property devoted to a public use may be claimed by one or more of several agencies, all protesting an admitted private or public right, and generally the one first in time is first in right. The relative rights of public service corporations with respect to property owned by one and sought to be condemned by another has been clearly defined by this court.

''There can be no doubt that property held by a corporation simply as a proprietor may be taken for public use by another corporation having the right of eminent domain. And even property actually devoted to public use is still subject to the power of eminent domain, except that 'it cannot be taken to be used for the same purpose in the same manner,' as that would

amount simply to a taking of property from one and giving it to another, without any benefit or advantage whatever to the public—an act which the legislature is powerless to authorize." *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670.

"Within the principles discussed in *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670, the power exists for one public service corporation to condemn property held by another. Such power may not be exercised arbitrarily or indiscriminately so as merely to take property away from one corporation and give it to another. It cannot be taken to be used for the same purpose in the same manner; but where there is a necessity for devoting it to some other public service, it may be condemned." *State ex rel. Skamania Boom Co. v. Superior Court*, 47 Wash. 166, 91 Pac. 637.

See, also, *State ex rel. Union Trust & Sav. Bank v. Superior Court*, 84 Wash. 20, 145 Pac. 999, 149 Pac. 324.

Because these things are true it has been necessary before now to measure the rights of the contending parties. The standard of measurement is the public interest, and private rights, as well as quasi-public rights, are made to give way to those which are entirely public.

The rule laid down by Mr. Lewis in his work on Eminent Domain, § 276, was adopted by this court in *State ex rel. Skamania Boom Co. v. Superior Court, supra.* It is:

"But we should say that there was a reasonable necessity for taking where the public interests would be better subserved thereby, or where the advantages to the condemnor will largely exceed the disadvantages to the condemnee."

The thing to be considered is in reality the interest of the public, for theoretically the taking or the holding of any property capable of being put to a public use is for the public. It thus becomes, as between contending

public service agencies, a question of benefit or advantage to the public. It is for this reason that courts invariably insist upon a showing of public necessity as well as a public use. The timber company is in no different situation than any other landowner who has been accustomed to use a highway which adjoins or crosses his lands. He is entitled to recover damages *pro tanto* to the extent of his injury.

The Northwest Electric & Water Works Company was organized in 1912, and took over a company which had secured, a franchise to supply the inhabitants of the city of South Bend with a supply of water for domestic purposes and for fire protection. Its franchise was granted on the 3d day of April, 1893, and will expire on the same day in the year 1923. The corporate powers of the electric company are primarily to acquire, lease, construct and operate water systems for the supply and sale to municipalities for domestic and other uses and purposes. Its predecessor had been, and it is now, engaged in the business of maintaining and operating a water works system in the city of South Bend. The furnishing of power to the inhabitants of the city is not within the corporate powers of the electric company, nor was it within the corporate powers of its predecessor. Counsel states the position of the company as follows:

"That, prior to the 16th day of February, 1913, Northwest Electric & Water Works, with a view to acquiring and obtaining land and riparian rights and water rights for its present and prospective needs in supplying the said city of South Bend, and its inhabitants, and the inhabitants of territory adjacent to said city, with water under its said franchise and with the knowledge that its then present supply was only adequate and no more than adequate for its then present needs, caused an investigation and survey to be made of possible and available sources of water supply in the

territory adjacent and tributary to the said city of
South Bend; that, as a result of such investigation and
survey, Northwest Electric & Water Works deter-
mined to purchase a tract of 120 acres of land, through
which land then flowed, and does now flow and run,
the south fork of the Willapa river, and thereupon and
on the said 16th day of February, 1913, Northwest
Electric & Water Works did acquire by purchase all
of the said real estate for the sum of $1,800, together
with the water rights and riparian rights appurtenant
thereto, for the purpose of constructing and installing
a dam on said south fork of the Willapa river upon
said land, and a system of water mains therefrom, for
the storage, transportation and conveyance of water
from said dam to the said City of South Bend, for the
purpose of supplying the water works therein, pursu-
ant to statute and said franchises.

"That, at the time of acquiring said real estate and
the water rights appurtenant thereto, the same were
acquired by the said Northwest Electric & Water
Works in good faith with the intention, in good faith,
of improving and utilizing the same in the manner, and
for the purpose aforesaid, within a reasonable time;
that in so acquiring said land and water rights, North-
west Electric & Water Works did so in reasonable an-
ticipation of the future needs of the said city of South
Bend; that at this time it is its intention, in good faith,
to so use and improve said land and water rights, that
there is a necessity for so using and improving said
land and water rights in the immediate future, and
that it is its intention, in good faith, to so improve
and utilize said land and water rights in the immedi-
ate future; that said site has the most available water
supply for the purposes contemplated by Northwest
Electric & Water Works, and that they have no other
use for said land and water rights than for the pur-
poses aforesaid, and have made no use of said prem-
ises, and will make no use of the same, except for the
purposes aforesaid, and that they have the ability to
prosecute the development of said site at such time
as it may become necessary; that there has been no
abandonment of Northwest Electric & Water Works'
intention to so use said property."

Reduced to its lowest terms, this statement is no more than this: that the electric company, in anticipation of a future necessity, has purchased land riparian to the south fork of the Willapa river. It is not shown that the company intends to put the land to a public use within any reasonable time, or that it will be necessary to the carrying out of the franchise obligations of the company during the few remaining years of its franchise. Neither is it shown, except by way of bare allegation, that its present sources of supply will not be ample or adequate to meet the demands of the public. Its right, therefore, if any, to block the plans of the power company lies in the fact that it is a riparian owner. This gives it no right to divert the waters of the stream. The electric company cannot carry flowing waters to their water system in the city of South Bend because of their ownership of the land. In the absence of a showing of intention, and a present acquiring of a right to divert the water, and a way to divert and carry it, and granting that an intended use may be reasonably postponed, we think the case of the electric company falls within the rule of *State ex rel. Kettle Falls Power & Irr. Co. v. Superior Court,* 46 Wash. 500, 90 Pac. 650, and *Chehalis v. Centralia,* 77 Wash. 673, 138 Pac. 293. In the latter case we said:

"The city of Centralia could not acquire the right to divert the waters of the stream for municipal uses by acquiring the lower riparian rights. Its rights are those of riparian owners; no more and no less; and it may be that respondent will have to extinguish those rights before it can divert the waters of the stream."

It is further argued that the land and riparian right of the Northwest Company cannot be taken by the power company in aid of its purpose to supply water to the inhabitants of the city of South Bend, it nowhere appearing that the city had ever requested it,

or the company ever refused, to furnish a supply of water for all purposes. But this argument is manifestly unsound, for, under the authorities cited, the Northwest Company is not only not using the waters of the stream, but could not put them to the uses contemplated by its franchise if it had been requested to supply additional water. Neither the water nor the right to take it away is in the Northwest Company. It will not be heard to urge as a defense that it has not been called upon to supply a thing which it does not own.

The South Fork Driving Company was organized in 1902 under the statute authorizing the formation of driving and booming companies. It caused a survey of the south fork of the Willapa river to be made, and thereafter filed a plat of the stream with the secretary of state. It has complied with all the laws, and has all the powers given to logging and driving companies by the statutes. It has since conducted a business of driving and booming logs.

The court found that there is a large amount of timber tributary to the south fork of the Willapa river, but refused to find that it would be either impossible or impractical to construct a logging road along the stream for the purpose of removing the timber. The court also found that a dam which claimant has constructed below the proposed dam of the petitioner, and without which its driving operations could not be carried on, would be rendered useless, and refused to find that the claimant had constructed two dams, one above and one below, the proposed head works, or that either of them would be rendered useless by reason of petitioner's undertaking.

But this seeming contradiction will not avail anything in this proceeding. For the law, as we understand it to be, will permit the petitioner to take the

property of the claimant driving company whether its right to drive and boom logs in the stream be destroyed or merely impaired.

This is clearly so where, by an admeasurement of the public interest in the two enterprises, it is clear that the one will contribute directly to the daily necessities of human life, health and happiness, and the other is contributing only indirectly, and then only as the public use is reflected through the maintenance of a purely commercial enterprise.

This court is firmly committed to the doctrine that one corporation may appropriate the property of another corporation—the test being the extent and manner of the proposed use as compared with the present use. *Samish River Boom Co. v. Union Boom Co.,* *supra.* The court was not put to the necessity of resting its decision in any general principles of law or equity. So far as we are concerned, the rule emerged from a rational construction of the statutes. It was restated in *State ex rel. Portland & Seattle R. Co. v.* *Superior Court,* 45 Wash. 270, 88 Pac. 201:

"All the facts and circumstances attending each case must be considered in order to determine whether there is, or is not, a reasonable public necessity for taking the property which is already devoted to a public use."

and in *State ex rel. Union Trust & Sav. Bank v. Superior Court, supra:*

"In all condemnation cases the paramount consideration is the public interest, and to that interest all rights must bow and all rules must bend."

We find no error.

Judgment affirmed.

ELLIS, C. J., MAIN, WEBSTER, and HOLCOMB, JJ., concur.

MOUNT, J. (dissenting)—I cannot agree to the conclusion of the majority as above stated.

This case was first heard by the department. At that time the judgment was reversed upon the ground that no necessity was shown for another public service corporation to do the same business as an old one was then engaged in. Afterwards a rehearing was granted and the case heard *En Banc*. The department opinion may be found in *State ex rel. South Fork Log Driving Co. v. Superior Court,* 94 Wash. 691, 163 Pac. 15, where the principal facts are stated. The record shows conclusively that the Northwest Electric & Water Works has been furnishing water and electricity to the city of South Bend for a number of years. The Willapa Power Company, a new company, seeks to furnish the same service; and in order to do so, seeks to condemn a tract of land, with its riparian rights, now owned by the Northwest Electric & Water Works, which land contains the only available and sufficient water supply tributary to the city of South Bend. This tract of land was purchased by the Northwest Electric & Water Works in anticipation of its future needs for water. Mr. Shepard, president, and Mr. Andrus, vice president and manager of the Northwest Electric & Water Works, each testified that the present supply of water was barely sufficient to meet present needs; that the population of the city was increasing; that, in dry spells, the supply ran short; that the demand for water was increasing; that they intended, within a reasonable time, to utilize the water from this tract of land, and that its use was necessary. (Relators' Abstract, pp. 113, 142 and 143.)

There was no dispute of these facts and no attempt to contradict them, notwithstanding what is said in the majority opinion concerning them; so that the real and controlling question in the case is, May one public service corporation, seeking to perform the same service as another public service corporation, condemn and

take over property of the other corporation reasonably necessary for that other to continue in business? In short, may a new public service corporation condemn an old one of the same kind out of business? The effect of the majority opinion is to answer this question in the affirmative. I am satisfied that this may not be done, and that the department opinion states the rule of law upon that question.

I therefore dissent.

FULLERTON, J., concurs with MOUNT, J.